JOHNSON, ADMINISTRATOR, APPELLANT, *v.* BUTTE & SU-
PERIOR COPPER CO., LTD., RESPONDENT.

(No. 2,817.)

(Submitted April 8, 1910. Decided April 25, 1910.)

[108 Pac. 1057.]

*Personal Injuries—Master and Servant—Mines—Negligence of
Shift-boss—Liability of Master—Nonsuit—Evidence, How
Viewed—Inconsistent Defenses—Pleadings—Admissibility in
Evidence—Survival of Actions.*

Corporations—Actions—Evidence and Procedure—Rules Applicable.
1. When a corporation is suing or being sued, it occupies the same
position as a natural person who is *sui juris;* the same rules of evi-
dence and procedure are applicable.

Pleadings—Inconsistent Defenses.
2. Although the defendant may interpose inconsistent defenses, they
must not be so far inconsistent that if the allegations of one are true,
the allegations of the other must of necessity be false.

Same—Admissibility in Evidence.
3. Since under section 6565, Revised Codes, pleadings must be veri-
fied, admissions in an answer may properly be offered in evidence; and
the plaintiff in doing so need not embrace in his offer the entire
answer, nor is he estopped from denying or disproving statements con-
tained in the pleading.

Personal Injuries—Mines—Negligence of Shift-boss—Evidence.
4. In an action to recover damages for personal injuries, brought un-
der section 5248, Revised Codes, making the operator of a mine lia-
ble for injuries caused by the negligence of a superintendent, shift-
boss, etc., plaintiff *held* to have made out a *prima facie* case upon
which to go to the jury, upon the questions whether a timber which, in
falling, produced the injury, was caused to fall by a shift-boss of
defendant company, and whether such person occupied the position of
shift-boss.

Same—"Shift-boss"—Definition.
5. The term "shift-boss" as used in section 5248, Revised Codes,
means a master workman who directs the operations of a set of men who
work in turn with other sets.

Same—Nonsuit—Evidence of Plaintiff—How Viewed.
6. Upon a motion for a nonsuit the plaintiff is entitled to have his
evidence considered in the light most favorable to him.

Same—Mines—Negligence of Shift-boss—Liability of Master—Statute—
Construction.
7. Under section 5248, Revised Codes, making a mine operator liable
for injuries to one of his employees when caused by the negligence,
*inter alia*, of a shift-boss, the fact that the negligent act of such
shift-boss, which caused the injury, was not connected with the work
of directing the men under him, but was committed while doing the
work of one of his subordinates, does not relieve the operator from

liability; so long as the act is done in the due course of his employ-
ment, the master is responsible, whether done in the discharge of
delegable or nondelegable duties.

Same—Survival of Actions.

    8.   An action for injuries to a servant survives under the statute, and
may be prosecuted either by his heirs or personal representatives; but,
by whomsoever prosecuted, it is the action which he had for the in-
juries and which accrued to him at the time he was injured, as dis-
tinguished from the damages which his estate suffered by reason of his
death therefrom.

*Appeal from District Court, Silver Bow County; Jeremiah
J. Lynch, Judge.*

ACTION by Charles J. Johnson, as administrator of the estate
of Fred Simila, deceased, against the Butte and Superior Cop-
per Company, Limited. Judgment of dismissal for defendant,
and plaintiff appeals. Reversed and remanded.

*Messrs. Maury & Templeman* and *Mr. J. O. Davies* submitted
a brief in behalf of Appellant. *Mr. H. L. Maury* argued the
cause orally.

The rules of pleading are general. They are designed to
embrace all persons, natural or artificial, capable of suing or
being sued. Corporations are bound by the same rules of
pleading that bind a natural person. (*Hunt* v. *San Francisco,*
11 Cal. 258; *San Francisco Gas Co.* v. *San Francisco,* 9 Cal.
466; 5 Ency. of Pl. & Pr., 60.) For the purposes of an action,
and as to all questions of procedure, a corporation is com-
pletely assimilated to a natural person. (5 Ency. of Pl. & Pr.
62; *People* v. *Trinity Church,* 22 N. Y. 44; *Olcott* v. *Tioga R.
Co.,* 20 N. Y. 210, 75 Am. Dec. 393; *Moran* v. *Long Island City,*
101 N. Y. 439, 5 N. E. 80; *St. Louis Co.* v. *Sandoval Co.,* 111
Ill. 32; *Harlem* v. *Emmett,* 41 Ill. 319.)

The district court erred in excluding the allegations of the
defendant's answer which were offered in evidence by plaintiff.
"Where parties allege matters of fact in their pleadings,
these pleadings may be offered in evidence against such parties
as admissions of the facts so alleged. Such written statements
are admissible on the same principle as oral admissions."
(Jones on Evidence, sec. 274; *Granite Gold Min. Co.* v. *Magin-*

*ness,* 118 Cal. 131, 50 Pac. 269; *Loftus* v. *Fischer,* 113 Cal. 286, 45 Pac. 328.) Nor does it matter that the averments in the pleading are on information and belief, for even in another suit this goes merely to the weight of the testimony, and not to its admissibility, and the supreme court of the United States says it is very persuasive evidence. (*Pope* v. *Allis,* 115 U. S. 370, 6 Sup. Ct. 69, 29 L. Ed. 393; Greenleaf on Evidence, secs. 552, 555; Taylor on Evidence, 7th ed., sec. 1753; *Talbot* v. *Laubheim,* 188 N. Y. 421, 81 N. E. 163; 1 Thompson on Trials, sec. 197; see, also, *Seattle Bank* v. *Carter,* 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177.)

Does the mining employer's liability Act operate for the benefit of nonresident aliens? Our contention is that it does. There are some Pennsylvania decisions against our position. They are collated in a note to 9 Am. & Eng. Ann. Cas. 1181, but, as is said in a valuable note found there, such a doctrine is now obsolete in the American law. In support of our position we refer the court to *Low Moor Iron Co.* v. *La Bianca,* 106 Va. 83, 55 S. E. 532, 9 Am. & Eng. Ann. Cas. 1179, and note.

Our contention is that under the strict interpretation of the statute as construed in *Dillon* v. *Great Northern Ry. Co.,* 38 Mont. 485, 100 Pac. 960, the action given by the statute was Simila's own action. The question whether the fact that all the heirs were nonresident aliens would militate against a recovery under the statute can be answered by the statement that our law permits them to inherit from Simila dead, and take his property in preference to all other persons. This statute was for the benefit of Simila, but, if there is a recovery under it, the property goes as the law presumes that he intended for it to go if he died intestate; and if they can inherit from Simila, the fact that they are nonresident aliens is no bar to this action. On the question whether damages in such a case as this should be nominal or substantial, see *Oliver* v. *Houghton,* 134 Mich. 367, 104 Am. St. Rep. 607, 96 Pac. 434, 3 Am. & Eng. Ann. Cas. 53; *Broughel* v. *Southern New Eng. Tel. Co.,* 72 Conn. 617, 45 Atl. 435, 49 L. R. A. 404; s. c., 73 Conn. 616, 84 Am.

St. Rep. 176, 48 Atl. 751; *Black* v. *Griggs,* 74 Conn. 582, 51 Atl. 523; *Missouri K., T. & R. Co.* v. *Elliot,* 102 Fed. 108, 42 C. C. A. 188.)

*Messrs. Kremer, Sanders & Kremer* filed a brief in behalf of Respondent.   Oral argument by *Mr. Bruce Kremer.*

The test of inconsistency of defenses which renders their union objectionable under the codes of procedure of a few of the states is generally the question whether both may be true or whether if one be true  the other must be false, and proof of one would necessarily disprove the other.   (*Gammon* v. *Ganfield,* 42 Minn. 368, 44 N. W. 125; *Backdahl* v. *Grand Lodge,* 46 Minn. 61, 48 N. W. 454; *Steenerson* v. *Waterbury,* 52 Minn. 211, 53 N. W. 1146; *Nelson* v. *Brodhack,* 44 Mo. 596, 100 Am. Dec. 328; *McCormick* v. *Kaye,* 41 Mo. App. 263; *Home Fire Ins. Co.* v. *Decker,* 55 Neb. 346, 75 N. W. 841; *Cate* v. *Hutchinson,* 58 Neb. 232, 78 N. W. 500; *Hollenbeck* v. *Clow,* 9 How. Pr. 289; *Bryant* v. *Bryant,* 2 Rob. 612; *Pavey* v. *Pavey,* 30 Ohio St. 600; *McDonald* v. *American Mortgage Co.,* 17 Or. 626, 21 Pac. 883; *Snodgrass* v. *Andross,* 19 Or. 236, 23 Pac. 969; *Lawrence* v. *Peck,* 3 S. D. 645, 54 N. W. 808; *Lake Shore etc.* v. *Warren,* 3 Wyo. 134, 6 Pac. 724.)

Under the common law, it was the rule that the plaintiff might use the answer of a defendant as evidence in his favor, but he must take the answer as a whole, and not such parts of it only as were favorable to him.   (*Miller* v. *Avery,* 2 Barb. Ch. (N. Y.) 582; *McNutt* v. *Dare,* 8 Blackf. (Ind.) 35; *Greenleaf* v. *Highland,* Walk. (1 Miss.) 375; *Ormond* v. *Hutchinson,* 13 Ves. 47, 33 Eng. Reprint, 212.)   And it is clear that under the reformed code procedure, the common-law rule that one plea could not be given the effect to help or destroy another plea in the same suit is analogously applicable.   (*Young* v. *Katz,* 22 App. Div. 542, 48 N. Y. Supp. 187; *Shrady* v. *Shrady,* 58 N. Y. Supp. 546.) Where the pleadings of the defendant contained no admission of fact against defendant's interest, the court erred in admitting the pleadings as evidence.   (*Illinois Cent. Ry. Co.* v. *Vaugin,*

33 Ky. Law Rep. 906, 111 S. W. 707.) Under this last doctrine, it appears the offer of appellant was incompetent, for there is no admission against respondent's interest apparent from the defense sought to be introduced.

The test of determining the liability of the master for the negligence of a shift-boss is not from the grade or rank of such vice-principal, but from the character of the act causing the injury. The negligence clearly must be in the performance of a nondelegable duty owing by the master. If the vice-principal in the performance of a delegable duty is guilty of negligence, then the reason for the rule is absent, and there is no liability which attaches to the master. (*Miller* v. *American Bridge Co.,* 216 Pa. 559, 65 Atl. 1109; *Donnelly* v. *S. F. Bridge Co.,* 117 Cal. 417, 49 Pac. 559; *Ell* v. *N. P. R. R.,* 1 N. D. 336, 26 Am. St. Rep. 621, 12 L. R. A. 97; 12 Current Law, 737; *Page* v. *Pure Food Co.,* 142 Mich. 17, 105 N. W. 72; *Robinson* v. *Railroad Co.,* 133 Mo. App. 101, 112 S. W. 730; *Perigo* v. *Indianapolis B. Co.,* 21 Ind. App. 338, 52 N. E. 462; *Dixon* v. *Union Iron Works,* 90 Minn. 492, 97 N. W. 375; *Baltimore & O. R. R. Co.* v. *Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; *Morrison* v. *San Pedro R. R. Co.,* 32 Utah, 85, 88 Pac. 998; *Stevens* v. *Strout,* 200 Mass. 432, 86 N. E. 907; *Ricks* v. *Flynn,* 196 Pa. 263, 46 Atl. 360; *McQueeney* v. *Chicago M. & St. P. R. R.,* 120 Iowa, 522, 94 N. W. 1124; *Jemming* v. *Great Northern Ry. Co.,* 96 Minn. 302, 104 N. W. 1079, 1 L. R. A., n. s., 696; *Riou* v. *Rockport Granite Co.,* 171 Mass. 162, 50 N. E. 525; *Mulligan* v. *McCaffrey,* 182 Mass. 420, 65 N. E. 831; *Louisville etc. R. R. Co.* v. *Isom,* 10 Ind. App. 691, 38 N. E. 423; *Hermann* v. *Port Blakely Mill Co.,* 71 Fed. 853; *Cashman* v. *Chase,* 156 Mass. 342, 31 N. E. 5; *Lynch* v. *Allyn,* 160 Mass. 248, 35 N. E. 550; *McCauley* v. *Norcross,* 155 Mass. 584, 30 N. E. 464; *Joseph* v. *Whitney Co.,* 177 Mass. 176, 58 N. E. 639; *Hall* v. *Wakefield etc.,* 178 Mass. 98, 59 N. E. 668; *Colorado Coal etc. Co.* v. *Lamb,* 6 Colo. App. 255, 40 Pac. 251.)

The complaint did not state facts sufficient to constitute a cause of action, in that it does not allege that Simila left any

heirs. (See *Webster* v. *Norwegian etc.*, 137 Cal. 399, 92 Am. St. Rep. 181, 70 Pac. 276; *Chicago etc. R. Co.* v. *Oyster*, 58 Neb. 1, 78 N. W. 359; *Pizzi* v. *Reed*, 36 Misc. Rep. 123, 72 N. Y. Supp. 1053; *Chicago etc. Ry. Co.* v. *Kinnare*, 115 Ill. App. 132; *Oulighan* v. *Butler*, 189 Mass. 287, 75 N. E. 726; *Chicago etc. R. Co.* v. *Bond*, 58 Neb. 385, 78 N. W. 710; *Southern Ry. Co.* v. *Maxwell*, 113 Tenn. 464, 82 S. W. 1137; *Bartley* v. *Boston etc. Ry. Co.*, 198 Mass. 163, 83 N. E. 1093.)

While the decisions as to the right of nonresident aliens to maintain an action of this kind are conflicting, we think the following authorities sustain our contention that they have no such right: *McMillan* v. *Spider Lake etc. Co.*, 115 Wis. 332, 95 Am. St. Rep. 947, 91 N. W. 979, 60 L. R. A. 589; *Brannigan* v. *Union etc. Co.*, 93 Fed. 164; *Deni* v. *Pennsylvania Ry. Co.*, 181 Pa. 525, 59 Am. St. Rep. 676, 37 Atl. 558; *Zeiger* v. *Pennsylvania Ry. Co.*, 151 Fed. 348; *Cleveland etc. Ry. Co.* v. *Osgood* (Ind. App.), 70 N. E. 839; *Roberts* v. *Great Northern Ry. Co.*, 161 Fed. 239. It is a general rule that express statutory words are necessary to create rights in a nonresident alien. (*Orr* v. *Hodgson*, 4 Wheat. 453, 4 L. Ed. 613; *Opinion of the Justices*, 7 Mass. 525; *McDonald* v. *Mallory*, 77 N. Y. 550, 33 Am. Rep. 664; *Rose* v. *Himely*, 4 Cranch, 279, 2 L. Ed. 620; Story on Conflict of Laws, secs. 7, 20, 98, 278; Endlich on Interpretation of Laws, secs. 166-176.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Fred Simila was employed by the defendant company as a miner, and was working in a shaft at the Black Rock mine, when a piece of timber fell upon him inflicting injuries from which he subsequently died. The administrator of his estate brought this action, and in his complaint alleges that one James Goggin was employed by the defendant company as a shift-boss at the time when and the place where Simila was injured, and that Simila's injuries were occasioned by the negligence of Goggin which caused the timber to fall. The answer of the

defendant admits its corporate existence, and admits that Simila was in its employ; but denies that Simila was injured at all while engaged in the discharge of his duties as a servant of the defendant company. There is a specific denial that Goggin was in fact, or was acting as, a shift-boss for the defendant company, and a denial that through any act of his Simila was injured. There is then a general denial of all the allegations of the complaint not specifically admitted or denied, and certain affirmative defenses are pleaded, the second of which only requires notice here;. and the gist of that defense is found in the following declaration: "That the said Simila was injured through the fault and negligence of one of defendant's employees, who was then and there a fellow-servant of the said Simila." Upon the trial the plaintiff offered in evidence the paragraph of the answer from which the above language is quoted, but an objection to the offer was sustained. At the close of plaintiff's case the defendant moved for a nonsuit. The motion was granted, a judgment rendered and entered dismissing the action, and from that judgment the plaintiff appealed. The evidence introduced and offered on behalf of the plaintiff is presented in a bill of exceptions.

1. It is urged that the trial court erred in excluding from the jury's consideration the second affirmative defense set forth in defendant's answer.

This action invokes an Act of the Ninth Legislative Assembly (Laws 1905, p. 51; Revised Codes, sec. 5248), which holds a mining corporation liable for injuries to one of its employees when such injuries are caused by the negligence of a superintendent, foreman, shift-boss, engineer, or craneman. While it is true that the affirmative plea that Simila was injured through the negligence of one of defendant's employees who was then a fellow-servant of Simila would not alone support the plaintiff's allegation that Simila was injured through the negligence of James Goggin, and that Goggin was a shift-boss, it would, however, tend to prove that Simila was injured through the negligence of an employee of the defendant company, and re-

lieve the plaintiff from the necessity of proving that the particular act which caused Simila's injury was a negligent act, and that the person who caused it was an employee of the defendant. If this portion of the answer had been admitted, plaintiff would then have had to prove only: (a) That Simila was injured while in the discharge of his duties as an employee of the defendant; (b) that the particular individual whose act caused the injury was James Goggin; (c) that James Goggin was a shift-boss; and (d) the extent of Simila's injury and the damages resulting therefrom, to make out a *prima facie* case. There is ample evidence in the record to support the first and fourth of these facts.

When a corporation is suing or being sued, it does not occupy a position different from that of a natural person who is *sui juris*. The same rules of evidence are applicable, and, so far as questions of procedure go, the corporation is treated as a natural person. (5 Ency. of Pl. & Pr. 61.) Section 7887, Revised Codes, provides: "Evidence may be given upon a trial of the following facts: * * * The act, declaration or omission of a party, as evidence against such party." The general rule governing the admissibility of pleadings as evidence is stated as follows: "Where parties allege matters of fact in their pleadings, these pleadings may be offered in evidence against such parties as admissions of the facts so alleged. Such written statements are admissible on the same principle as oral admissions." (Jones on Evidence, 274; 16 Cyc. 968; 2 Ency. of Law & Pr. 173; 1 Am. & Eng. Ency. of Law, 2d ed., 719; Abbott's Trial Brief, Civil Jury Trials, 295.) This court has recognized the right of the defendant to interpose inconsistent defenses, under the provisions of section 6549, Revised Codes; but it has never gone to the extent of saying that such defenses may be so far inconsistent that, if the allegations of one are true, the allegations of the other must of necessity be false. Generally speaking, our Code requires pleadings to be verified (Revised Codes, sec. 6565); but, in permitting a defendant to set forth in his answer as many defenses as he has,

it was never intended to sanction or encourage perjury. In states where the pleadings are required to be verified, the general rule is: "The defendant may plead inconsistent defenses, provided they be not so incompatible as necessarily to render one or the other absolutely false." (*Clarke* v. *Lyon County,* 7 Nev. 75; *Seattle Nat. Bank* v. *Jones,* 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177; 1 Ency. of Pl. & Pr. 857; Bliss on Code Pleading, sec. 343.) There are some authorities which hold that if an answer contains inconsistent defenses, as, for instance, a denial that the plaintiff was injured through the negligence of anyone, and an affirmative plea that he was injured through the negligence of a fellow-servant, then the affirmative plea is not admissible in evidence to prove the issue made by the complaint and the denial, as the practical effect of this would be to deny to a defendant the right to interpose such inconsistent defenses. (Pomeroy's Remedies and Remedial Rights, 2d ed., 724; 1 Elliott on Evidence, sec. 236.) But so far as we are able to determine from the means at hand, these authorities are treating of cases arising in states where the pleadings are not required to be verified. It appears to us to be the acme of absurdity to say that the casual admission of a defendant, made on the street, may be put in evidence against him, but that his solemn admission, made deliberately and under oath, in a pleading, which calls for a true statement of the facts, may not be used against him. If by the second affirmative defense the defendant sought to charge that Simila's injuries were caused by a fellow-servant, it would seem that it would have been sufficient to say so, without volunteering the information that the act which caused the injury was a negligent one. Adopting the rule as stated in *Clarke* v. *Lyon County,* above, it is manifest at once that the reason for the contention made by Pomeroy and Elliott fails when applied to the pleadings under our Code, and that there is not any reason whatever why admissions in a pleading ought not to be used in evidence against the pleader.

In passing, we may say that it is very doubtful whether the answer in this case is open to adverse criticism. The denial is

that Simila was injured "while engaged in his duties as defendant's servant."

It was not any objection to the offered evidence that the plaintiff did not embrace in his offer the entire answer. Section 7871, Revised Codes, provides: "When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood, may also be given in evidence." In Abbott's Trial Brief, Civil Jury Trials, 299, the rule is stated as follows: "A party may read in evidence a mere extract from his adversary's pleading, however brief, provided he does not omit a part of a sentence or clause which qualifies that part which he reads, so as to pervert the sense or render it uncertain." From the allegations of this affirmative defense, plaintiff was seeking to show that Simila's injury was caused by a negligent act, and that the person whose negligence caused the injury was an employee of the defendant company. The plaintiff would not have been bound by the allegation that the person who caused the injury was a fellow-servant of Simila. We quote again from Abbott's Trial Brief, 298, the following: "A party who puts in evidence his adversary's pleading is not thereby estopped from denying or disproving statements contained in it."

Our conclusion is that the trial court erred in excluding the evidence offered.

2. But counsel for respondent insist that, assuming this evidence had been admitted, plaintiff would still have failed to make out a *prima facie* case upon which to go to the jury. Simila and five other men were engaged in sinking a shaft. They were seventy-five or eighty feet below the 1,200-foot level. They had drilled holes preparatory to blasting, and Goggin had taken their tools to a place of safety, eighteen or twenty feet above where the men were working. The timber which

struck Simila was used by the defendant to protect the regular sets of timbers from the effect of the blast, and before it fell it was resting upon the mining timbers, fifteen or twenty feet above the bottom of the shaft. Simila was bending over cleaning out the drill holes preparatory to charging them, when this piece of timber fell and struck him on the head, inflicting injuries from which he died on the following day. There was not anyone who saw the timber when it commenced to fall; but just before it struck Simila, Goggin called out from up the shaft, "Look out below!" There is some evidence that at that time Goggin himself was fifteen or twenty feet above the bottom of the shaft. By a process of elimination, plaintiff sought to show that Goggin was the only person who could have caused the timber to fall; and this he did by showing the whereabouts of every other man employed in or about the shaft at the time the accident occurred, and by showing that there was not any other employee of the defendant company near the timber when it fell. There is some evidence, however, that soon after the accident the cage came down the shaft and Goggin was on the cage. This might tend to show that he could not have been near the timber when it fell; but the weight of the evidence was for the jury. It seems to us that this is sufficient circumstantial evidence to make out a *prima facie* case identifying Goggin as the person who caused the timber to fall. It appears reasonably certain that Goggin was the only person who could have explained the circumstances which caused the timber to fall, and he had died before the case was tried.

3. It became, then, incumbent upon the plaintiff to show that Goggin was a shift-boss at the time of the accident. The evidence tends to show that Davis was superintendent at the mine; that McLeod was foreman, and that McLeod visited the place where this sinking was in progress, at least once during every shift and stayed about ten minutes each time. Touching the character of Goggin's employment, the witness Devaney testified: "Mr. Goggin had charge of the work when the foreman

was away.  Five men were under him.  I do not remember how long he had charge of the men.  Mr. Goggin gave orders to the men, as to their work, when the foreman was not present, if any orders were given.  That had been going on all the time I was there.  I could say that I had been there as much as a month, and a little more when this injury took place.  Of these six men, when the foreman was up and not present, Mr. Goggin was the boss.  * * *  Goggin and I were engaged in ordinary mining together as partners.  Mr. Goggin and I worked as partners while the others worked as partners on that shift.  We were all engaged in the same character of work.  The work that we were engaged in was sinking.  * * *  Q. Mr. Devaney, Mr. Goggin was there working as an ordinary miner.  You say he was bossing while McLeod was not there.  He was pusher, was he not?  A. Supposed to be; yes, sir.  A pusher does the work of a miner, right there with us; handles tools and mines, and supposed to work a little harder than the rest of us.  I am familiar with the custom of the camp down here for seventeen years.  It is a custom of miners recognized by the Butte Miners' Union.  When I said he was bossing, I mean that he set the pace and was pusher on that shift.  He did the work with me.  * * *  As to whether or not he was bossing on that shift, I will say that he would dictate to us what to do.  He dictated to the other men on that shift what they should do.  When he was dictating what they should do, they were doing the work for the Butte and Superior.''

·Fillerup, a witness for plaintiff, testified to substantially the same thing, and, in addition that the other men obeyed the orders given by Goggin and would have lost their positions had they refused to do so.

The witness Johnson testified as follows: "Mr. Goggin was bossing on that shift on which I was working, Jim Goggin.  I worked there three months.  Mr. Goggin had been bossing there during all of that time.  I do not know just exactly how long I had worked there after Simila was hurt, but about five or six days after.  * * *  Mr. Goggin gave the orders to the

other five men there that were on that shift. The balance of the men carried out the orders as he gave them; that was before Simila died. * * * Well, Mr. Goggin said what we were going to do in that work. Then he helped us to do it. He helped us do the work with Devaney as his partner."

At the time the Act of 1905 was under consideration by the legislature, the word "shift-boss" had a well-defined and well-understood meaning. It is a compound word, formed by uniting the words "shift" and "boss." The word "shift," as used in that Act, means "a set of workmen who work in turn with other sets, as a night shift" (Webster's International Dictionary) ; or the time during which a particular set of men work. The noun "boss" means a master workman or superintendent, a director or manager. (Webster's International Dictionary.) "A boss is one who oversees or gives direction." (*Applebee* v. *Albany Brewing Co.,* 12 N. Y. Supp. 576.) The verb "boss" means to hold mastery over, to direct or superintend. (Webster's International Dictionary.) The word "shift-boss," as used in the Act of 1905, means a master workman who directs the work of the set of men engaged upon a particular shift.

It is the rule in this state, recognized for many years, that upon a motion for a nonsuit the evidence will be deemed to prove every fact which it tends to prove; that is to say, the plaintiff is entitled to every legitimate inference which can be drawn from the evidence, or, to state the same thing in another way, the plaintiff is entitled to have his evidence considered in the light most favorable to him. If, then, the evidence which is set forth above tends to show that Goggin was placed in a position where his duties included the giving of directions to the men on his shift, the character of his employment was a question of fact for the jury to resolve, and that, too, without reference to the particular designation given him by his master or by other workmen; for, if he exercised the authority of a shift-boss with the consent of his master, he was one in fact, whether he was called a miner, a pusher, a superintendent, or a

shift-boss. As touching the character of Goggin's employment, we think the evidence sufficient to go to the jury.

4. A most serious question is presented upon this appeal, by the contention made by counsel for respondent that, conceding Goggin was the employee whose negligent act caused the injury to Simila, and conceding further that in giving orders to the other men engaged with him Goggin was a shift-boss within the meaning of the statute, still the evidence shows that at the time the timber was dislodged Goggin must have been engaged in the work of an ordinary miner, namely, removing the tools to a place of safety. We agree with counsel that this is the only fair inference deducible from the evidence, and this fairly presents the question: May the mining company be held responsible, under the Act of 1905, for damages resulting from the negligence of a shift-boss, when such negligent act was not connected with the work of directing the men under him, but was committed in doing the work of an ordinary miner?

Counsel for respondent cite cases which they maintain tend to support their theory that "the negligence clearly must be in the performance of a nondelegable duty owing by the master. If the vice-principal in the performance of a delegable duty is guilty of negligence, then the reason for the rule is absent, and there is no liability which attaches to the master." One of these cases is *McCauley* v. *Norcross*, 155 Mass. 584, 30 N. E. 464; but the decision in that case does not have any bearing upon the question now before us, as the court held that the evidence was sufficient to go to the jury, as tending to show that the negligent act was that of a superintendent in the course of his superintendence. Another case cited is *Colorado Coal & Iron Co.* v. *Lamb*, 6 Colo. App. 255, 40 Pac. 251. This case was decided upon the principles of the common law and the provisions of the coal mines Act, approved February 24, 1883 (Laws 1883, p. 102), as amended by the Act of April 8, 1885 (Laws 1885, p. 134). The principles of the common law and the provisions of the Colorado Act are so far different from our Act of 1905 that the Colorado decision cannot possibly throw any light upon the question before us.

The other cases relied upon are all from Massachusetts, beginning with *Cashman* v. *Chase,* 156 Mass. 342, 31 N. E. 4, and concluding with *Hall* v. *Wakefield & S. St. Ry. Co.,* 178 Mass. 98, 50 N. E. 668. An examination of these cases discloses that every one was decided under the Employer's Liability Act of Massachusetts, approved May 14, 1887 (Laws 1887, c. 270), which holds the master liable for injuries sustained by a servant: "(2) By reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence." Under that statute the Massachusetts court has uniformly held that "the employer is not answerable for the negligence of a person intrusted with superintendence, who at the time of and in doing the act complained of is not exercising superintendence, but is engaged in mere manual labor, or the duties of a common workman." It would seem difficult to understand how any different conclusion could be drawn from the plain language of that statute; and it is equally difficult for us to apply the doctrine of those cases to the present action, which invokes our Liability Act of 1905, which omits the very pertinent words found in the Massachusetts Act, *viz.,* "and exercising superintendence." Under the Massachusetts statute, in order to hold the master liable for the negligence of the superintendent, "the negligence complained of must occur not only during the superintendence, but substantially in the exercise of it." (*Fitzgerald* v. *Boston & A. R. Co.,* 156 Mass. 293, 31 N. E. 7.) The Employer's Liability Acts of England, New York, and Alabama contain the same provision as that quoted from the Massachusetts statute, and the courts construing these Acts have experienced great difficulty in determining whether a particular act was, or was not, done in the exercise of superintendence. Under the rules of the common law this plaintiff would not have any standing in court upon the showing made, for the negligence of Goggin would be held to be the negligence of a fellow-servant, for which the master is not liable. (*Goodwell* v. *Montana Central Ry. Co.,* 18 Mont. 293, 45 Pac. 210.)

In enacting the statute of 1905, the legislature must have had some definite purpose in view.  We can gather the legislative intent only from the language employed and the evils which it was sought to cure.  It is manifest at once that one purpose was to deprive the master of the defense of negligence of a fellow-servant, when the negligent act was that of a shift-boss; and the fact that the English, Massachusetts and Alabama statutes had been in force for many years before 1905, and that difficulties had been encountered in applying them, the omission by our legislative assembly of the words found in those statutes is at least significant.  If our legislature had intended that the only negligent act of a shift-boss for which the master will be held liable is one done in exercising direction or control over the men under him, it would have been an extremely simple matter to have said so by adding the words of the English, Massachusetts, New York, or Alabama statutes, or other words of like import.  But this was not done.  Our legislature boldly declares that the mining company is liable for the negligence of a shift-boss which causes injury to any employee, if the employee himself was without contributing negligence on his part.  If the legislature did not intend that the courts should accept and act upon this statute as it is written, then the legislature, and not the courts, should amend the Act and make it clearly express the legislative will.

It would be idle to say that by this construction the mining company would be liable for the negligent act of a shift-boss when not engaged in the discharge of his duties, for the all-sufficient reason that when not on duty he is not a shift-boss.  He is only a shift-boss when on shift.  If a mining company sees fit to impose upon an employee the duties of a shift-boss, and in addition thereto duties which are usually performed by an ordinary miner, it cannot be permitted thereby to change the grade of employment, or to so far confuse the character of employment that those for whose benefit the statute was enacted will be unable to determine when they are, or are not, afforded the protection which the law intended.  To say that the mining company is only responsible for such negligent acts of its shift-

boss as come within the definition of nondelegable acts or duties,. would render the statute a dead letter, for in the absence of statute the master would be liable for such acts, and if his liability is now precisely the same, and he can invoke the same defenses as before, then our legislature acted in vain in attempting to afford protection to workmen which they did not enjoy before. But this was not the purpose of the Act. The legislature intended that the mining company should be liable for· the negligent acts of its shift-boss, whether the acts were done· in the discharge of delegable or nondelegable duties, so long as· they were done in the due course of his employment, whatever· that might be.

While this action is prosecuted by the administrator, it is in· fact Simila's action—the common-law action which he had for· the injuries which he received, and which accrued to him at. the time of his injuries, and remained available to him until the instant of his death. (*Dillon* v. *Great Northern Ry. Co.*, 38· Mont. 485, 100 Pac. 960.) By virtue of our survival statute, the right of action did not cease at the death of Simila, but may be prosecuted either by his heirs or personal representatives ;· but, by whomever prosecuted, it is still the action which Simila had. Whether his heirs, if any there be, have a cause of action· under the provisions of our statute, modeled after Lord Campbell's Act, for damages which they sustained, as distinguished from the damages which he or his estate suffered, need not be considered here. The only reason for invoking the statute of· 1905 is to prevent the defendant from interposing the defense that Simila was injured through the negligence of a fellow-servant, conceding that the person who caused the injury was a shift-boss.

We think the case should have gone to the jury for a determination upon the merits.

The judgment is reversed, and the cause is remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur..

Rehearing denied May 18, 1910.