STATE EX REL. CARTER, APPELLANT, *v.* KALL, RESPONDENT.

(No. 3,709.)

(Submitted November 25, 1916.  Decided January 11, 1917.)

[162 Pac. 385.]

*Intoxicating   Liquors — Licenses — Collection — Statutes—Construction.*

Intoxicating Liquors—When License cannot be Collected.

1.   Though a retail liquor dealer who engages in business without procuring a license may be prosecuted under the criminal law, the state cannot by civil action collect the amount of the license from one who, after refusal to issue one to him because the maximum number of licenses allowed by law in the town in which he intends to conduct a saloon has been reached, does business notwithstanding such refusal.

Statutes—Construction—Intention of Legislature.

2.   In the construction of a statute the primary duty of the court is to give effect to the intention of the legislature in enacting it, which intention must be sought in the language employed and the apparent purpose to be subserved.   .

[As to rules for construction of statutes, see note in **12 Am. St. Rep. 826.**]

*Appeal from District Court, Musselshell County; Chas. L. Crum, Judge.*

ACTION by the State of Montana, on the relation of E. B. Carter, against Fred Kall.   Judgment for defendant and relator appeals.   Affirmed.

*Mr. J. B. Poindexter,* Attorney General, and *Mr. John H. Alvord,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Alvord* argued the cause orally.

A state in imposing license fees may intend both regulation and revenue.   (Cooley on Taxation, 3d ed., p. 1136.)   It is not necessary that a license system should be employed only as a police supervision or regulation.   (*Northwestern Mut. Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.)   There is but one liquor license known and recognized by the law of Montana.   (*State ex rel. Frost* v. *Barnett,* 49 Mont. 252, 141 Pac. 287.)   It is no defense to a

prosecution for selling liquor without a license to plead that no license was obtainable. (*Welsh* v. *State,* 126 Ind. 71, 9 L. R. A. 664, 25 N. E. 883; *State* v. *Funk,* 27 Minn. 318, 7 N. W. 359; *State* v. *Tucker,* 45 Ark. 55; *State* v. *Brown,* 41 La. Ann. 771, 6 South. 638; *State* v. *White,* 115 La. 779, 40 South. 44.) When a license is required to carry on a certain business, it applies to all persons who engage in that business, whether it is carried on legally or illegally. (*State* v. *White, supra; Foster* v. *Speed,* 120 Tenn. 470, 15 Ann. Cas. 1066, 22 L. R. A. (n. s.) 949, 111 S. W. 925.) A license tax imposed upon a business which is unlawful is collectible. (Cooley on Taxation, 3d ed., 24; *State* v. *White, supra; Conwell* v. *Sears,* 65 Ohio St. 49, 61 N. E. 155; *License Tax Cases,* 5 Wall. (72 U. S.) 462, 18 L. Ed. 497; *Veazie Bank* v. *Fenno,* 8 Wall. (75 U. S.) 533, 19 L. Ed. 482; *Foster* v. *Speed, supra.*)

*Messrs. Boarman & Boarman* and *Messrs. Jameson & Dusenbery,* for Respondent, submitted a brief; *Mr. V. D. Dusenbery* argued the cause orally.

In the absence of express statutory authority, an action for license fee cannot be maintained where no license is taken out. (*Monterey County* v. *Abbott,* 77 Cal. 541, 18 Pac. 113, 20 Pac. 73; *Santa Cruz* v. *Santa Cruz R. Co.,* 56 Cal. 143; 25 Cyc. 629.) An action to recover a license fee under statutory authority is not an action to recover a penalty, but in the nature of a debt. (*County of San Luis Obispo* v. *Hendricks,* 71 Cal. 242, 11 Pac. 682; *City of Sacramento* v. *Dillman,* 102 Cal. 107, 36 Pac. 385; *San Luis Obispo County* v. *Greenberg,* 120 Cal. 300, 52 Pac. 797.) A license is a permit to do business which could not be done without the license. (*City of Sonora* v. *Curtin,* 137 Cal. 583, 70 Pac. 674; *Cache County* v. *Jensen,* 21 Utah, 207, 61 Pac. 303; 25 Cyc. 597.) A license fee is not a tax. (*State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095.) A license fee is a sum exacted for the privilege of engaging in business, while an occupation tax is levied on an existing business irrespective of the right to engage therein. (*Palmer* v.

*State,* 88 Tenn. 553, 8 L. R. A. 280, 13 S. W. 233; *Cache County* v. *Jensen,* 21 Utah, 207, 61 Pac. 303; *Youngblood* v. *Sexton,* 32 Mich. 406, 20 Am. Rep. 654.) Under the Montana statutes a liquor license is expressly made negotiable and transferable, and is therefore a valuable property right. (Rev. Codes, sec. 2759; *Degginger* v. *Seattle Brewing & Malting Co.,* 41 Wash. 385, 4 L. R. A. (n. s.) 626, 83 Pac. 898.) For the proposition that there can be no collection of license fee where the liquor traffic, once licensed, has been later prohibited, we would cite one of appellant's authorities: *State* v. *White,* 115 La. 779, 40 South. 44.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In the complaint in this action it is alleged that for more than six months during the year 1914 the defendant sold intoxicating liquors in the city of Roundup without having a license permitting him to do so. The prayer is for judgment for $264, the amount required to procure a liquor license to do business for six months in a city of the class to which Roundup belongs, and for certain penalties. The answer admits all the material allegations of the complaint, and, by way of special defense, alleges that during all the times mentioned there were outstanding in full force and effect in the city of Roundup the maximum number of liquor licenses allowed by law, by reason whereof the defendant could not procure a license, and the county treasurer could not lawfully issue one to him. A motion to strike this affirmative defense was overruled, and the trial of the cause resulted in a judgment for defendant, from which this appeal is prosecuted.

The single question presented is: May the state by civil action [1] collect a license tax from one whom it refuses a license, but who nevertheless engages in business in violation of the law?

It is the general rule that, in the absence of express legislative authority an action cannot be maintained to collect a license fee where a license has not been applied for or granted. (25

Cyc. 629.)   The statutes relating to the granting of licenses and the collection of license taxes are found in sections 2746–2780, Revised Codes, with certain amendments subsequently enacted which are not of consequence here.   Section 2749 provides that "a license must be procured immediately before the commencement of any business or occupation liable to a license tax." Section 2750 authorizes the county treasurer to commence a civil action in the name of the state "against any person required to take out a license who fails, neglects, or refuses to take out such license or who carries on or attempts to carry on business without such license."   [This is the only statute authorizing an action to collect a license tax, though counsel assume that authority is likewise granted by section 2780.   The last section does nothing more than impose a penalty for doing business without a license.]   Section 2752 provides that upon the trial of an action prosecuted under section 2750 the production of the license, proof that such license has been procured, or proof of the payment of the proper license tax with damages and costs shall constitute a complete defense.   Section 2755 provides that all property held or used in any trade, occupation or profession for which a license is required is subject to a prior lien in favor of the state for the amount of the license tax.   Section 2759 requires every person who sells or offers for sale intoxicating liquors to obtain a license from the county treasurer and to pay therefor the license tax, which is graduated according to the population of the place where the business is to be conducted.

With the enactment of the Codes in 1895 a general license statute went into effect.   Under its terms almost every trade, profession and business was subjected to the payment of a license tax.   There were not any restrictions upon the number of licenses which might be issued, and no question of discretion was involved.   Upon the payment of the required fee the license issued as a matter of course, and unless the state was in a position to grant a license, it could not exact the license fee.   The sections mentioned above were all of that general legislative scheme.

Since section 2750 is the only statute which authorizes the prosecution of a civil action to collect a license fee, the solution of the question before us is to be found in the answer to the further inquiry: What does that section mean?

In the construction of a statute the primary duty of the court [2] is to give effect to the intention of the legislature in enacting it. (*Lerch* v. *Missoula Brick & Tile Co.*, 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25.) The intention is to be sought in the language employed and the apparent purpose to be subserved. (*Johnson* v. *Butte & Superior Copper Co.*, 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057.)

The language of section 2750 is that the county treasurer must direct suit in the name of the state "against any person required to take out a license who fails, neglects, or refuses to take out such license or who carries on or attempts to carry on business without such license." When the statute was enacted that language had a definite and well-understood meaning. "Any person required to take out a license" meant any person engaged in a profession, trade or occupation for which a license tax was required, and a person engaged in any such business upon the payment of the required fee could demand a license as a matter of right. When we consider the history of our license legislation and the provisions of sections 2749, 2752 and 2755, in connection with the terms of section 2750, and realize that when these statutes were enacted the licensing authorities could not refuse a license to anyone who applied for it and paid or tendered the required fee, we are driven to the conclusion that in the enactment of section 2750 the legislature intended nothing more than to provide a means for the collection of a license fee from one entitled to a license as a matter of right upon payment of the fee. Though our license statutes have been changed in many respects since 1895, there is not anything in the subsequent legislation to indicate that section 2750 should be given a different meaning from the one manifestly intended in the first instance. It cannot be said that this construction renders that section a dead letter.

It is true that under the present statutes a liquor license does not now issue as a matter of course; but a license is still required as a condition precedent to the right to engage in any one of the several other occupations, and such license can be demanded as of right by anyone who pays or tenders the required fee.

An attempt is made to distinguish between a license tax or occupation tax, on the one hand, and a license fee exacted merely for regulation purposes. Our license statutes fail to indicate the particular purpose for which they were enacted. Section 1, Article XII, of the Constitution authorizes the legislature to impose a license tax, but in *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516, this court held, in effect, that it was not the intention of that provision to differentiate between the license tax, strictly so-called, and the license fee exacted in a regulatory measure, but that it was the purpose to refer the general subject of licenses to the legislature, and that under the provision in question a license tax might be imposed for revenue, for regulation, or for both purposes.

The defendant may be prosecuted under the criminal laws, but he cannot be made to pay the license fee and be denied the license—the consideration for the fee.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.