STATE EX REL. VICKERS ET AL., RESPONDENTS, *v.* BOARD
OF COUNTY COMMISSIONERS OF BIG HORN
COUNTY ET AL., APPELLANTS; PATTEN, INTERVENER
AND APPELLANT.

(No. 5,998.)

(Submitted October 20, 1926.    Decided October 30, 1926.)

[250 Pac. 606.]

*Counties — Printing  Contract — Newspaper  "Published"  in
County—Construction of Statute.*

Counties—Printing Contract—Newspaper "Published" in County—Stat-
ute—Construction.
1. *Held,* that by the requirement of section 4482 of the Revised
Codes of 1921, that county commissioners must contract with a
newspaper of general circulation "published" within the county
and which has been published therein at least one year, to
perform the county printing, a paper is contemplated the work
of composing, printing, issuing and distributing of which is done
in the county, and not one the composition and printing of
which is done in another county and sent to the county in which
it maintains an office for distribution.

Statutory Construction—Rule.
2. In the construction of a statute courts must give effect to
the intention of the legislature in enacting it, the intention to
be sought in the language employed and the apparent purpose to
be subserved, and to this end recourse may be had to the history
of the statute.

Counties—County Printing—Newspapers—"Patent Insides" not Dis-
qualification.
3. Section 4482, *supra,* as construed in paragraph 1 above, *held*
not to prohibit the use of "patent insides" used in small country
newspapers, they not affecting the status of a paper so long as
it otherwise meets the necessary requirements of a newspaper of
general circulation.

Same—Newspaper Published in County—When Qualified to Bid for
Contract.
4. The fact that a weekly newspaper secured a government
permit for entry in the postoffice as second-class matter at the
county seat of the county in which it was distributed, though
published in an adjoining county, is of no consequence in de-
termining whether it was "published" in the former to qualify
it as a bidder for county printing under section 4482 above.

Same—Newspaper—Temporary Supplement not Qualified to Bid on
County Printing Contract.
5. Where an eight-page newspaper for some four months of the
year necessary to qualify it for bidding on county printing was

2.  See 25 R. C. L. 1029.
3.  See 20 R. C. L. 206.

published in another county, a "supplement" consisting of one sheet printed on one side, issued by the publisher in the former county during the four months, for which, however, no permit for entry in the postoffice had ever been obtained, which was included in and designated a part of the regular issue, and the name of which was subsequently changed to that of the regular paper, was not the newspaper contemplated by section 4482, above, and therefore not entitled under the name of the regular paper to bid on county printing.

[1]  Newspapers, 29 Cyc., p. 697, n. 25 New. Publish, 32 Cyc., p. 1258, n. 66.
[2]  Statutes, 36 Cyc., p. 1106, n. 29; p. 1107, n. 30; p. 1110, n. 54; p. 1138, n. 47.
[3]  Newspapers, 29 Cyc., p. 697, n. 25 New.
[4]  Newspapers, 29 Cyc., p. 697, n. 25 New.
[5]  Newspapers, 29 Cyc., p. 697, n. 25 New.

*Appeal from District Court, Big Horn County; O. F. Goddard, Judge.*

SUIT by the State, on the relation of Robert A. Vickers and another, copartners, doing business as Vickers & Corkins, against the Board of County Commissioners of Big Horn County, in which J. E. Patten intervened. From a judgment for plaintiffs, the board and intervener appeal. Affirmed.

*Messrs. Brown & Jones,* for Appellants, submitted an original and a reply brief; *Mr. Robt. N. Jones* argued the cause orally.

The publication of a newspaper does not require that the mechanical work of printing be done in the same place where the paper is published. The law, succinctly stated, is that a newspaper is "published" in the county where it has its home, where it is placed in circulation, and that the physical work of setting the type and impressing the same upon the paper is not even to be taken into consideration in deciding whether or not a paper is entitled to be awarded a contract for county printing. (*Bayer* v. *City of Hoboken,* 44 N. J. L. 131; *In re McDonald,* 187 Cal. 158, 201 Pac. 110; *In re LeFavor,* 35 Cal. App. 146, 169 Pac. 413; *Stanwood* v. *Carson,* 169 Cal. 640, 147 Pac. 562, 565; *In re Gainsway,* 66 Misc. Rep. 521, 123 N. Y. Supp. 966; *Polzin* v. *Rand-McNally & Co.,* 250 Ill.

561, Ann. Cas. 1912B, 471, 93 N. E. 623; *Ricketts* v. *Hyde Park,*
85 Ill. 110; *Hart* v. *Smith,* 44 Wis. 213; *Norton* v. *City of Du-
luth,* 54 Minn. 281, 56 N. W. 80; *Palmer* v. *McCormick,* 30
Fed. 82; *Brown's Estate* v. *City of West Seattle,* 43 Wash. 26,
85 Pac. 854; *Aetna Life Ins. Co.* v. *Wortasewski,* 63 Neb. 636,
88 N. W. 854; *People* v. *Read,* 256 Ill. 408, Ann. Cas. 1913E,
293, 100 N. E. 230; *Tonawanda* v. *Price,* 171 N. Y. 415, 64
N. E. 191; *State* v. *Bass,* 97 Me. 484, 54 Atl. 1113; *Leroy* v.
*Jamison* (3 Sawy. 369), 15 Fed. Cas. No. 8271; *McFarlane* v.
*Hulton* (1899), 1 Ch. (Eng.) 884, 68 L. J. Ch. 408, 80 L. T.
(n. s.) 486, 47 W. R. 507; *Hadlock* v. *Tucker,* 93 Neb. 510,
141 N. W. 192; *Nebraska Land Stock-Growing Inv. Co.* v.
*McKinley, Lanning etc. Co.,* 52 Neb. 410, 72 N. W. 357; *Dun-
ton* v. *Parker,* 97 Me. 461, 54 Atl. 1115.) The fact that inter-
vener published a supplement and sent it out for distribution
did not affect the standing of either as newspapers. (*Sage* v.
*Central Ry. Co.,* 9 Otto (U. S.), 334, 25 L. Ed. 394 [see,
also, Rose's U. S. Notes].)

*Messrs. Guinn & Maddox,* for Respondents, submitted a brief;
*Mr. C. C. Guinn* argued the cause orally.

Citing: *Stange* v. *Esval,* 67 Mont. 301, 215 Pac. 807; *State*
v. *Grey,* 21 Nev. 378, 32 Pac. 190; *Kansas City* v. *Overton,* 68
Kan. 560, 75 Pac. 549; *Rose* v. *Fall River Savings Bank,* 165
Mass. 273, 43 N. E. 93; *Norton* v. *Duluth,* 54 Minn. 281, 56
N. W. 80; *Jackson* v. *Beatty,* 68 Ark. 269, 57 S. W. 799; *Age
Herald Publishing Co.* v. *Huddleston,* 207 Ala. 40, 37 A. L. R.
898, 92 South. 193, 20 R. C. L. 201, 220.

Patent insides of a newspaper have never been considered
the newspaper. It is quite common for patent insides to be
printed outside of the county of the newspaper. There is no
merit in appellants' contention that because such patent in-
sides are usually printed outside of the county in which the
newspaper is published, that constitutes a publication of the
newspaper. (*20 R. C. L. 206.*)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from judgment restraining the board of county commissioners of Big Horn county from entering into a contract for county printing with the Searchlight Publishing Company, and commanding said board to contract with the Hardin Tribune, Inc.

The board of county commissioners of Big Horn county advertised for bids for the county's printing to be submitted March 2, 1926. The Hardin Tribune, Inc., and J. E. Patten, manager of the Searchlight, submitted bids, of which the latter bid was the lower and was accepted by the board. Thereupon, the Hardin Tribune instituted an action to enjoin the board from entering into a contract with the Searchlight and to compel the acceptance of its bid, upon the ground that the Searchlight was not competent to contract under the law, and that the Hardin Tribune is the only newspaper published in Big Horn county measuring up to the requirements of the law. The board by answer denied these allegations, and J. E. Patten, as manager of the Searchlight, filed a complaint in intervention alleging facts sufficient to qualify his paper for a county contract; these allegations were denied by reply.

The matter was heard by Judge O. F. Goddard on March 20, 1926, and this hearing resulted in judgment for the plaintiffs according to the prayer of their complaint. The board and the intervener thereupon joined in an appeal to this court from the judgment.

The only question presented on this appeal is as to whether, under the evidence adduced, the Searchlight had been published continuously in Big Horn county at least one year immediately preceding the second day of March, 1926.

The uncontroverted evidence discloses that in January, 1925, the Searchlight newspaper plant was moved from Billings, Yellowstone county, to Hardin, Big Horn county, during which operation some casting, without which the newspaper press

could not be used, was lost.    From January 21, 1925, to June
3, 1925, Manager Patten maintained the Searchlight office at
Hardin, where all editorial matter and copy were written;
this was sent to Billings, each week, where the manual labor
of getting out and printing the paper was done at the Western
Newspaper Union Office.    The completed edition was then sent
to Hardin, where the newspapers were mailed out to the Search-
light subscribers from the Searchlight office as second-class
matter, under permit from the government postal department.
Such permit was secured on application through the local
postoffice and the submission of a copy of the paper and affi-
davits.

The paper so distributed was the usual country weekly,
made up of one-half patent ready-printed matter and the
other half local items, general news, and advertising; it con-
sisted of eight pages, fifteen inches by twenty-two inches each,
six columns to the page.    The first page of each edition was
headed the Searchlight and thereunder appeared the words,
"Hardin, Big Horn County, Montana," with appropriate date.
Nothing therein contained was composed or printed in Big
Horn county, but, during the period mentioned, a single sheet,
nine inches by twelve inches in size, was printed on one side
with three or four columns of additional local items, headed
"Searchlight Supplement" and thereunder issued as a part of
the regular edition.    This work was done in the Searchlight
office on a job-press and one loose sheet inserted in each paper
sent out.    Asked whether he ever made application for a per-
mit for, circulated, or published a newspaper known as the
"Searchlight Supplement," Mr. Patton answered: "No; that
was a part of the Searchlight."

From June 10, 1925, to March 2, 1926, the entire regular
edition of the Searchlight, with the exception of the patent
matter, was composed, printed, and placed in circulation at
Hardin, Big Horn county, and the Supplement was discon-
tinued.

The controlling statute (sec. 4482, Rev. Codes 1921), if set out in full, would unduly lengthen this opinion; briefly, it requires the county commissioners of the several counties "to contract with some newspaper, published at least once a week, and of general circulation, published within the county, and having been published continuously in such county at least one year, immediately preceding the awarding of such contract, to do and perform all of the printing for which said counties may be chargeable," *etc.* Then follows an enumeration of supplies, with maximum charge therefor and the section closes with the provision that: "All newspapers which may receive any contract for printing under this Act, and which may not be able to execute any part of such contract, shall be required to sublet such contract or portion of contract to some newspaper or printing establishment within the state, which shall do the work under contract so sublet entirely within the state with Montana labor."

1. It is first contended that, as the statute employs only [1] the word "published," the full requirement of the statute is met by the circulation of a newspaper from the office thereof within the county, at least once a week for the period of one year, regardless of where the work on such paper is done.

The diligence of the learned counsel for defendants has disclosed numerous authorities to the effect that the place of publication of a newspaper is where it is first put in circulation, regardless of where such paper is printed, but in no one of the cases cited was the question here involved decided. They deal with the status of publications as newspapers or official newspapers, with statutory requirements regarding the publication of legal notices, notices of election and the like, and the facts and circumstances shown were found to be sufficient to bring the "publication" within the requirements of the statutes considered, as the purposes of the Acts were evidently fully served.

77 Mont.—21

The nearest approach to the case at bar is the case of *Bayer* v. *Hoboken,* 44 N. J. L. 131, wherein the New Jersey court had under consideration an Act requiring city councils to publish their proceedings in a newspaper "printed and published" in the city. It was held that where the office of the newspaper in question was in Hoboken, and the entire matter for the paper was composed, set up, and placed in forms at such office, and the papers were issued from there to its subscribers, it fulfilled the requirements of the Act, although the presswork was done in New York. There the purpose of the Act was to insure notice to the people of the city as to the action of the council, and that purpose was served by the paper considered, regardless of where the mechanical work was done. But even though the case was on all fours with this case as to purpose, the facts here do not measure up to the findings in that case, as the most the evidence here shows is that the editorial matter and copy for the Searchlight were written in its office at Hardin and the papers were issued from there to its subscribers.

In the California cases cited, the purpose of the Acts considered was publicity and the reaching of the people of the community. (*Stanwood* v. *Carson,* 169 Cal. 640, 147 Pac. 562; *In re Lefavor,* 35 Cal. App. 146, 169 Pac. 413.) In the *Lefavor Case* it appeared that, except for seven issues of the newspaper in question (whether at the beginning of its career or during the period covered, not appearing), the newspaper was both printed and published in the city in question. The court held that to declare that this fact was sufficient to deny the paper judgment that it had been in general circulation in the city for one year would be too narrow a construction of the statutes.

The statutes under consideration in the *Lefavor Case* were sections 4460 to 4462 of the Political Code, requiring the newspapers in which official notices, *etc.,* were published, to be "printed and published" in the town wherein the publication is to be made. Their construction was again before the court

in *In re McDonald,* 187 Cal. 158, 201 Pac. 110, decided in 1921, wherein it is held: "To give a reasonable construction to the language of the statute, and keeping in view the object sought to be served by the legislation—that of having an effective medium of publicity for legal notices in the community—it must be held that by the conjunctive 'and' it was not intended to require that the physical act of printing was to be done in the place of publication, but merely that the paper be printed and circulated there," holding that "print" is, in this connection, synonymous with "publish."

This interpretation of the intention of the legislature of California evidently did not meet with the approval of that body, for, at the next session of the legislature, it added section 4463 to the Chapter on newspapers, which reads, in part: "The word 'printed,' as used in said section, shall mean, and be construed to mean, that the mechanical work of producing such newspaper of general circulation, that is to say, the work of typesetting and impressing type on paper, shall have been performed during the whole of the period as designated and required by said section;   *   *   *   and in no case shall the words 'printed' and 'published' be construed as synonyms, but each shall be understood to relate to separate acts or functions necessary to constitute a newspaper of general circulation." The intention of the legislature of that state was thus made clear.

"In the construction of a statute, the primary duty of the [2] court is to give effect to the intention of the legislature in enacting it. (*Lerch* v. *Missoula Brick & Tile Co.,* 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25.) The intention is to be sought in the language employed and the apparent purpose to be subserved. (*Johnson* v. *Butte & Superior Copper Co.,* 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057.)" (*State ex rel. Carter* v. *Kall,* 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385.) For this purpose we may resort to the history of the statute (*Haydin* v. *Normandin,* 55 Mont. 539, 179 Pac. 460), and for this purpose, unless based upon statutes similar

to our own and passed under like circumstances, the decisions of other courts are of little aid.

It is true that our statute employs only the word "published," but the meaning of the word depends upon the subject with which it is connected. It may mean merely made known. (*North Baptist Church* v. *Orange,* 54 N. J. L. 111, 14 L. R. A. 62, 22 Atl. 1004.) Slander is published by word of mouth; libel is any sort of writing given publicity; a legal notice may be published by posting, and a newspaper may be published at a given place, within the meaning of one statute, while it does not at all meet the requirements of publication under a different statute. To publish a newspaper is, by common understanding, to compose, print, issue, and distribute it to the public (*Age-Herald Pub. Co.* v. *Huddleston,* 207 Ala. 40, 37 A. L. R. 898, 92 South. 193), and, in our opinion, this was the understanding of the term intended by the legislature in passing the Act under consideration. The clear purpose of the Act was to compel the letting of printing contracts to local newspapers, in order that local capital and local labor should secure the benefits of the expenditure of money derived from local taxes, including their own; the closing paragraph of the Act emphasizes this purpose by providing that, where the newspaper holding the county printing cannot perform a part of the contract, it must sublet that part of the contract to an establishment which will do the work within the state and with Montana labor.

We have heretofore held that "the word 'published,' as used in the statute, evidently means printed and published. It refers to a newspaper having its home in the county" (*Stange* v. *Esval,* 67 Mont. 301, 215 Pac. 807), and, whether such declaration was or was not necessary to a decision in that case it correctly interprets the statute and expresses the legislative intent in its passage. To hold otherwise would defeat the purpose of the Act by permitting a large concern situated in a city within the state, or even without the state, to control the county printing in any number of counties by establishing

offices therein and furnishing such offices with papers for distribution within the counties.

2. Counsel for defendants assert that such a construction of [3] the statute will prohibit the use of the patent insides used in all small newspapers; but the statute will never be given such a narrow construction. These patent insides do not affect the status of the newspaper so long as the paper otherwise meets the necessary requirements of a newspaper of general circulation, as the patent portions might be omitted and the newspaper still meet all of the requirements. (20 R. C. L. 206.)

3. The fact that the Searchlight secured a government permit [4] for entry in the postoffice as second-class matter is of little consequence, as the government requirements for such a permit do not measure up to our requirements in this regard.

4. Counsel cite authorities to the effect that a change of [5] name does not affect the status of a newspaper, but they have no application here. There was no change of name; the intervener, during the period from January to June, circulated a full and complete newspaper from Hardin, under the name of the Searchlight, and thereafter continued to do so under the same name. During the first period, he included therein a supplement, presumably for the purpose of complying with the governmental requirements; but, whatever its purpose, it cannot aid him, as it was but a part of the regular issue and was so designated. He himself testified that he never made application for a permit for, circulated, or published a paper known as the "Searchlight Supplement"; so there can be no merit in the assertion, if made, that the 9x12 sheet printed in Hardin was a newspaper known as the "Searchlight Supplement," the name of which was thereafter changed to the Searchlight, and we do not understand that any such assertion was ever made.

It follows that the Searchlight met the requirements of the statute only from June 10, 1925, to March 2, 1926, or less than one year, and was therefore not eligible to contract with

the commissioners for the county printing. No error was committed by the court in finding in favor of plaintiffs and entering judgment on those findings.

Judgment affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE STARK, concur.

JUSTICES HOLLOWAY and GALEN not sitting.