[L. A. No. 6527. In Bank.—September 30, 1921.]

In the Matter of the Application of D. D. McDONALD, Publisher, to have the Standing of the "Ontario Weekly Herald," etc., as a Newspaper of General Circulation, etc., Ascertained and Established.

[1] PUBLICATION—DEFINITION OF WORD "PRINT."—The definition of the word "print" is to put in print, or cause to be put in print or issued from the press; carry or send forth in print; publish.

[2] NEWSPAPERS—GENERAL CIRCULATION—PRINTING IN ONE TOWN AND PUBLICATION AND CIRCULATION IN ANOTHER.—The fact that the physical printing of a paper is done in one town, and the publication and circulation in another, does not prevent it from being a newspaper of general circulation within the meaning of section 4460 of the Political Code.

APPEAL from a judgment of the Superior Court of San Bernardino County. Rex B. Goodcell, Judge. Affirmed.

The facts are stated in the opinion of the court.

George D. Squires and Archie D. Mitchell for Appellant.

McNabb & Hodge for Respondent.

LAWLOR, J.—This is an appeal by the contestant from a judgment in favor of the petitioner, on a petition to have a publication declared to be a newspaper of general circulation, as that term is defined in section 4460 of the Political Code.

The petitioner, D. D. McDonald, was the editor and publisher of the "Ontario Weekly Herald." In accordance with the provisions of section 4462 of the Political Code, he petitioned the superior court of San Bernardino County to have the said publication declared a newspaper of general circulation, and entitled to print publications, notices by publication, official advertising, or public or legal notices. Section 4462 provides: "Whenever a newspaper shall desire to have its standing as a newspaper of general circulation, as that term is defined in section four thousand four hundred and sixty, ascertained and established, it may . . . file

a verified petition in the superior court of the county, or city and county, in which it is established, printed and published, setting forth the facts which justify such action. . . . ''   Section 4460 of the Political Code is as follows: ''A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a *bona fide* subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement.''   The material allegations of the petition were to the effect that the ''Herald'' was a newspaper published for the dissemination of local and telegraphic news; that it had a *bona fide* subscription list; that it was established July 18, 1918; that it was published at Ontario, California, every Thursday for more than one year preceding the filing of the petition; and that it was not devoted to or published in the interest of any particular class or group.   The petition was contested by the California Press Association, the only objection to its sufficiency being that it did not allege that the paper was ''printed'' at Ontario.   Upon the trial, petitioner, who was the only person examined, testified that the physical printing of the paper was not done at Ontario, but at Colton, California, but that the office was at Ontario, which was the principal place of circulation, and that a city license to conduct the business of a newspaper was paid to the city of Ontario.   Judgment was rendered for petitioner, and the contestant appeals.

The only question to be decided is whether the fact that the physical printing of the paper is done in one town, and the publication and circulation in another, prevents it from being a newspaper of general circulation within the meaning of the statute.   Appellant contends: ''The point in this case is that the legislature has undertaken to define a newspaper of general circulation, a term often used by it in the codes and statutes of the state, for the evident purpose of securing publicity for public or official advertising and preventing the abuses in public affairs which would result from its concealment in newspapers devoid of standing, character

and circulation"; and insists it is "not unreasonable to assume that the legislature, when it defined a newspaper of general circulation, meant all that it said in section 4460, and that all of the words therein used are to be given force and effect. . . . The petition in this case at bar assiduously eschews all reference to the place where said paper is printed."

It was said in the case of *In re Le Favor*, 35 Cal. App. 145, 146, [169 Pac. 413]: "From these findings made by the trial judge, it is very apparent that the only ground upon which the denial of the petition was made was because seven issues of the newspaper were not actually 'printed' in the city of Watts. The newspaper was circulated there and was a paper local to that community. We think to construe the statute in such a close and literal sense is to narrow its meaning more than was intended by the legislature. The object to be accomplished was to define newspapers in which public notices might be made and which would fairly express such notices to the particular community intended to be reached. . . . The case of *Bayer* v. *Hoboken*, 44 N. J. L. 131, is directly in point. There a statute required the printing of a notice in a newspaper 'printed and published' within the limits of a municipality. The newspaper in which the publication was made was printed altogether on presses in the city of New York, but was distributed in Hoboken. The court held that such a newspaper was 'printed and published' as required by the statute." In *Stanwood* v. *Carson*, 169 Cal. 640, 647, [147 Pac. 562, 565], it was said that "the vital consideration being notice by publication, such publication is the publication contemplated by law, with little or no regard paid to the mere place of printing, even when the word 'printing' coupled with publication is embraced in the statutory requirement. (*State* v. *Hoboken*, 44 N. J. L. 131; *Ricketts* v. *Hyde Park*, 85 Ill. 111; *Brown's Estate* v. *West Seattle*, 43 Wash. 26, [85 Pac. 854]; *Hinchman* v. *Barns*, 21 Mich. 558; *Greenlee* v. *Marks*, 62 Ind. 420; *Hart* v. *Smith*, 44 Wis. 229.)" In *Nebraska Land etc. Co.* v. *McKinley-Lanning Loan & Trust Co.*, 52 Neb. 410, [72 N. W. 357], in considering a statute which required a notice to be published in a paper "printed" in a county, the court said: "We do not think that the word 'print' was by the legislature used in the specific and somewhat

technical sense of designating the purely mechanical act of impressing the characters upon the paper. The object of the statute was to give notice, and, if the legislature had the distinction at all in view, it would not, for that purpose, have selected the place of printing, instead of that of publication. 'Print' is familiarly used in the sense of 'publish,' and in that sense the word receives recognition in many, if not all, of the dictionaries, and in that sense we are satisfied the legislature used it."

[1] The Standard Dictionary gives one definition of "print" as follows: "To put in print, or cause to be put in print or issued from the press; carry or send forth in print; publish; as, the newspaper *printed* the story." The Century Dictionary defines it thus: "To cause to be printed; obtain the printing or publication of; publish," and in Webster's Dictionary this definition is given: "To publish a book, article, music, or the like." [2] To give a reasonable construction to the language of the statute, and keeping in view the object sought to be served by the legislation—that of having an effective medium of publicity for legal notices in the community—it must be held that by the conjunctive "and" it was not intended to require that the physical act of printing was to be done in the place of publication, but merely that the paper be printed and circulated there. We think it clear from this fact and the authorities cited that the word "printed" was used in the statute in the sense of the definitions we have given.

In this case the office of the paper is at Ontario, where it is established, and the tax for conducting the business is paid there. The paper is caused to be printed in Ontario, the printing matter is obtained in, it is published in, and it is circulated at Ontario. In the production of the publication, everything is done at Ontario, save the setting up of the type and making the impressions on the paper. It would be giving too narrow a meaning to the word "printed" to hold that these acts alone were contemplated by its use in the statute. The only reasonable construction that can be given to "printed and published" is that the paper must be produced in the community where it is aimed to have it recognized as a legal advertising medium.

Appellant cites numerous authorities to the well-recognized principle that "some effect is to be given to every word

in the statute, without rejecting any word as redundant or treating it as merely synonymous with some other word or words.'' But in arriving at our conclusion we have not failed to give effect to the word ''printed.'' Appellant also cites *Application of Devlin and Judah*, 12 Cal. App. 403, [107 Pac. 583], but that case is not in point, for the reason that another statutory qualification was involved—the necessary period the publication must have been established.

Judgment affirmed.

Wilbur, J., Lennon, J., Sloane, J., Shurtleff, J., and Angellotti, C. J., concurred.