## NORTH CENTRAL PUBLISHING COMPANY ṽ. CITY OF ST. PAUL AND ANOTHER.[1]

November 27, 1936.

No. 30,986.

*Kerr, O'Neil & Cragg,* for appellant.

*John L. Connolly* and *Louis P. Sheahan,* for respondent City of St. Paul.

*Doherty, Rumble & Butler,* for respondent *Midway News.*

[1]Reported in 269 N. W. 835.

LORING, JUSTICE.

The plaintiff appeals from a judgment for the defendants in an action brought to restrain the city of St. Paul from accepting the bid of *The Midway News* for the publication of its official proceedings.

The question involved here is whether or not *The Midway News* is a legal newspaper under the provisions of the state law as required by the city charter. 2 Mason Minn. St. 1927, § 10935, provides in part:

"A newspaper in order to be qualified as a medium of official and legal publications, shall:

"(1) Be printed from the place from which it purports to be issued, * * *

"(2) It shall be issued at least once each week, and if a daily at least six days of each week, from a known office established in such place for publication and equipped with skilled workmen and the necessary material for preparing and printing the same; * * * provided that part of the presswork shall be done in its known office of publication, except in cities of the first class when the presswork may be done elsewhere; * * *."

L. 1935, c. 166, as an amendment to § 10935, adds further provisos whose constitutionality is here attacked. As we dispose of the case it is unnecessary to pass upon the constitutional question.

Apparently *The Midway News* is a trade-name for a publication owned by one H. O. Warming. Its office or business establishment consists of two rooms on the eighth floor of the Manhattan building at 141 East Fifth street in the city of St. Paul. No type is set in these rooms. The proprietor is a skilled newspaper man and printer but has the linotype work done by a job printing establishment on another floor in the same building. The type is then taken to the office of *The Midway News* and by the proprietor and his helper placed in frames or forms along with plate matter and other advertising matter such as cuts and the like. Necessarily the columns of the linotype matter are rearranged, and the entire setup of the paper is composed in the office of *The Midway News*. It is

then returned to the job printing establishment after being locked in the forms, and there the presswork is done.

It will be seen from the above statement that the *News* is published from a known office and that it has skilled workmen who are engaged in putting together the type, cuts, and plate matter necessary for preparing the paper for printing. Such being the case, the statute authorizes the presswork to be done elsewhere, and we see no objection to the *News* contracting for the linotype work outside its offices. It may be noted that there is no attack made upon the constitutionality of the exception of cities of the first class from the requirement that part of the presswork be done in the establishment. We think that the record is sufficient to support the court's finding that *The Midway News* is a newspaper qualified as a medium for official and legal publications under the statute. Therefore it becomes unnecessary for us to pass upon the constitutionality of the 1933 law, upon which some members of this court feel grave doubt.

Judgment affirmed.