DEARBORN INDEPENDENT, INC., *v.* CITY OF DEARBORN.

1. NEWSPAPERS—STATUTES—SECOND-CLASS MAIL—PUBLICATION OF
   LEGAL NOTICES.
   Statutory requirement that in order to qualify as a newspaper
   for the publication of legal notices that the newspaper be ad-
   mitted by the United States post-office department for trans-
   mission as mail matter of the second class is invalid (Const
   1908, art 5, § 1; CL 1948, § 691.611).

2. SAME—OFFICIAL NEWSPAPER FOR HOME-RULE CITY—PRINTING AND
   PUBLICATION.
   The main purpose sought to be accomplished by home-rule city
   charter provision that official newspaper for the city be
   "printed and published" in the city is to get notice of the
   pending or contemplated proceedings to those persons who may
   be presumed to be interested therein, a purpose which is ac-
   complished regardless of where the mechanical work incident
   to printing is done, hence, the word "printing" should be con-
   strued as merely directory, not mandatory (Dearborn Charter,
   § 5.14).

3. SAME—OFFICIAL NEWSPAPER FOR HOME-RULE CITY—PRINTING.
   Newspaper which had been designated by the common council of
   home-rule city as the city's official newspaper in which notices,
   ordinances and other records, required to be published by the
   charter, were to be published, qualified for such designation
   by being published within such city after the mechanical work
   of printing was done elsewhere, notwithstanding charter re-
   quired such newspaper be "printed and published" in the city,
   the word "printed" being given a liberal or directory meaning
   instead of a mandatory one (Dearborn Charter, § 5.14).

REID, C. J., dissenting in part.

Appeal from Wayne; Toms (Robert M.), J.  Sub-
mitted October 5, 1950.  (Docket No. 49, Calendar
No. 44,914.)  Decided December 6, 1950.  Submitted

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 39 Am Jur, Newspapers and Press Associations §§ 12, 13.
     As to publication in newspaper as constructive notice, see
     39 Am Jur, Notice and Notices § 21.

on rehearing April 10, 1951. Amended opinion filed October 2, 1951. Rehearing denied December 3, 1951.

Bill by the Dearborn Independent, Inc., a Michigan corporation, against City of Dearborn and others for decree determining that Dearborn Guide is not a newspaper qualified for publication of legal notices. Decree for plaintiff. Defendants appeal. Reversed.

*John J. Fish,* for plaintiff.

*Dale H. Fillmore,* Corporation Counsel, for defendant City of Dearborn and others.

*Walter F. Brackel,* for defendant Lancaster and others, doing business as Guide Newspapers.

*Joel K. Underwood, Frank C. McCann, Earl C. Smith,* and *Robert E. Childs,* of counsel, for defendants.

*Amici Curiae:*
Detroit Law Journal, by *Thomas W. Thompson* and *John V. Moran.*

Advertisers Press, Inc., by *Myron Winegarden.*

*Miller, Canfield, Paddock & Stone.*

Highland Parker, Inc., by *Ellman & Ellman.*

William S. Mellus, doing business as "The Lincoln Parker," "The Allen Parker," "The Melvindale Messenger," "The Ecorse Enterprise," "The Southwest Detroiter," and "The Township Tribune," by *Chapman & Chapman.*

REID, C. J. *(dissenting in part).* The amended bill of complaint was filed in this case March 24, 1950, by the plaintiff, a Michigan corporation, publisher of the Dearborn Independent, a weekly newspaper, and owner of properties assessed for taxes in the city of Dearborn, for a determination that the Dearborn Guide, a publication of some of the defendants, doing business as Guide Newspapers, is not a newspaper qualified for the publication of legal notices under CL 1948, § 691.611 (Stat Ann § 27.801), that the Dearborn Guide is not qualified to be designated as the official city newspaper of Dearborn under section 5.14 of the charter of the city of Dearborn, that plaintiff may be decreed to be the lowest responsible bidder and entitled to be designated as the official newspaper of the city of Dearborn for the 12 months then next ensuing and that the court determine and decree that a resolution adopted by the defendant council on February 21, 1950, being resolution 2–232–50, is void and that it be held for naught, that the court declare to be null and void and in violation of section 5.14 of the city charter of the city of Dearborn any contract on the part of the city with the defendant Guide Newspapers as a publication of the official proceedings of the city, and for other relief.

Section 5.14 of the charter of the city of Dearborn provides as follows:

"At or prior to its second regular meeting in February of each year, the council, after investigating the circulation, rates, quality of printing, deliveries, and responsibility of available newspapers, and after receiving bids, shall designate some newspaper of general circulation which is qualified to publish legal notices under the laws of the State of Michigan, and is printed and published in the city and printed in the English language, as the official newspaper of the city for the next 12 months. All notices, ordinances and other records required by the

provisions of this charter to be published, shall be published in said official newspaper in the manner and form in this charter provided: Provided, however, that the council may order additional publications of any such notice, ordinance or other record in other newspapers published in the city and printed in the English language or in any financial or trade paper, journal or magazine. If at any time, no newspaper has been designated as the official newspaper of the city or in case the newspaper as designated ceases regular publication or is not giving satisfactory service, the council shall order the publication of such notices, proceedings, ordinances or other records, as are required to be published, in some other newspaper printed and published in the city in the English language or, if there be none, then in some other newspaper printed in the English language and circulated in the city; provided, however, that the city shall not be without an official newspaper more than 30 days."

The trial court held in effect that under the above quoted section 5.14 of the city charter, the Guide Newspapers was not disqualified, but was disqualified under CL 1948, § 691.611, above referred to. The common council of the city of Dearborn and the members of the common council of the city of Dearborn took a general appeal. Defendants Lancaster, general partner, and Aaron and Ross, limited partners, doing business as Guide Newspapers, also took a general appeal. The Dearborn Independent, Inc., plaintiff, as cross-appellant, took a general appeal.

The agreed facts are as follows:

Plaintiff, the Dearborn Independent, Inc., is a Michigan corporation, duly authorized and licensed to do business in the State of Michigan, and is the publisher of the Dearborn Independent, a weekly newspaper, of general circulation, published in the English language, and both printed and published at

14510 Michigan avenue, Dearborn, Michigan, and plaintiff is a taxpayer in said city of Dearborn.

Plaintiff's publication, the Dearborn Independent, is qualified to publish legal notices under the laws of the State of Michigan; said publication has been admitted by the United States post-office department for transmission as mail matter of the second class; said publication has a bona fide list of paying subscribers; and it is also distributed free each week to a number of residents in the city of Dearborn.

The defendant, city of Dearborn, Wayne county, Michigan, is a municipal corporation, duly organized and existing as a home-rule city under PA 1909, No 279, as amended (CL 1948, § 117.1 *et seq.* [Stat Ann 1949 Rev § 5.2071 *et seq.*]). The defendants Joseph M. Ford, Marguerite C. Johnson, George Wm. Bondie, Patrick J. Doyle, Lucille H. McCollough, Edward J. Dombrowski and Martin C. Griffith, are the duly-elected, qualified and acting members of the city council of the city of Dearborn; the defendant Roy C. Lancaster is a general partner, and the defendants, Cy Aaron and William A. Ross, limited partners, in a copartnership doing business under the name and style of Guide Newspapers, the place of business of said copartnership being at 15608 Michigan avenue, Dearborn, Michigan.

The defendants, Roy C. Lancaster, Cy Aaron and William A. Ross, doing business as Guide Newspapers, are the publishers of the Dearborn Guide, a weekly paper, published, circulated and distributed in the city of Dearborn. At 15608 Michigan avenue, Dearborn, Michigan, the said publishers gather the news, typewrite the news stories and headlines, and out of said typewritten copy prepare the "dummy" paper, that is to say, establish the exact location where each news article, picture or advertisement is to be placed in the newspaper; proofs are checked on the printed copy at 15608 Michigan avenue, Dear-

born, Michigan; at 2932–2936 Caniff avenue, Hamtramck, Michigan, a jobbing contractor sets the type, places the type in forms for the pages in the paper and does the "press run," that is to say, the mechanical act of printing the paper.

Guide Newspapers commenced the weekly publication, general circulation and distribution of the Dearborn Guide in the city of Dearborn on October 2, 1948; said paper is published in the English language and is published, distributed and circulated from the Dearborn Guide's place of business at 15608 Michigan avenue, Dearborn, Michigan, and has been so published, distributed and circulated weekly from the said address continuously from October 2, 1948, to the date hereof.

The Dearborn Guide is a weekly paper published for the dissemination of local or telegraphic news and intelligence of a general character. It has been established, published and circulated at regular intervals without interruption for at least 1 year in the city where such publication, notice by publication or official advertising is given or made.

The Dearborn Guide has a bona fide list of paying subscribers; further, it is distributed free each week to a number of residents of the said city of Dearborn. Said Dearborn Guide has not been admitted by the United States post-office department for transmission as mail matter of the second class.

Defendant city contends that the council resolution letting the contract to the Dearborn Guide, which has a general circulation throughout the city of Dearborn, will enable the said city to save a substantial sum of money annually; plaintiff contends the same is immaterial to the issues herein.

Pursuant to the requirements of section 5.14, as above set forth, bids were duly submitted to the council by plaintiff and others, and it seems that the Dearborn Guide was the lowest bidder, the Dear-

born Independent the next lowest bidder and the Dearborn Press, the other bidder, was the highest bidder.

Upon the advice of the corporation counsel that the provision of section 5.14 of the charter requiring that the official newspaper be "printed" in the city of Dearborn was illegal, the defendant council on February 21, 1950, adopted a resolution accepting the bid of the Dearborn Guide, designating it as the official newspaper of the city of Dearborn and authorizing the publication of official proceedings, notices and ordinances therein. The effect of said resolution, adopted February 21, 1950, by its terms has now expired under the 12-month's charter limitation. However, the importance of the legal issues involved and the effect of a judicial determination on legality of past as well as future publication of legal notices requires a decision in the present case. It goes beyond the mere issues as to the validity of the action taken by the city council, in that it necessarily involves the construction of the State statute and the validity, in general, of the publication of legal notices throughout the State, and under many circumstances.

The broader question is, what constitutes a newspaper which is qualified to publish legal notices under the laws of the State of Michigan? More particularly, must a newspaper, in order to qualify, have been, or still be, admitted by the United States post-office department "for transmission as mail matter of the second class?" The material part of CL 1948, § 691.611 (Stat Ann § 27.801), which prescribes the legal qualifications for a newspaper permitted to publish legal notices in this State, is as follows:

"The term 'newspaper' as used in any statute of this State relative to the publication of a notice of

any kind, shall be construed to refer only to a newspaper published in the English language for the dissemination of local or telegraphic news and intelligence of a general character, or to a newspaper published wholly or chiefly for the dissemination of legal news, *and which shall have been admitted by the United States post-office department for transmission as mail matter of the second class* and which shall have a bona fide list of paying subscribers or to a newspaper having a free circulation which has been published at regular stated intervals under the same name and in the same location without interruption for at least 2 years." (Italics supplied.)

The requirement in said statute, above italicized, of admission by the post-office department as a second-class mail matter would make the validity of the publication of legal notices depend upon the future as well as present regulations of the United States post-office department. In that respect it offends against the Constitution of our State (1908), art 5, § 1, which, among other things, provides:

"The legislative power of the State of Michigan is vested in a senate and house of representatives."

The act in question unlawfully attempts to delegate to the United States post-office department the determination of the qualifications of a newspaper to publish legal notices. See *King* v. *Concordia Fire Ins. Co.* (syllabus 5), 140 Mich 258 (6 Ann Cas 87), as follows:

"The Michigan standard policy law of 1881 (Act No 149), providing for an insurance commission and authorizing it to prescribe a standard form for fire insurance policies, is unconstitutional because attempting to delegate legislative powers in violation of section 1 of article 4 of the Constitution."

At the time of the decision in the *King Case* the Constitution of 1850 was in effect, which, however,

contained substantially the same delegation of the legislative power (Const 1850, art 4, § 1) as we have above quoted from the Constitution of 1908, which latter was in effect when the statute, above quoted (CL 1948, § 691.611), was enacted and also when the said statute was amended in 1933 in the form above quoted. See, also, *In re Brewster Street Housing Site,* 291 Mich 313, in which, at page 340, the *King Case, supra,* is cited as establishing the law in this State upon the subject of unconstitutional delegation of legislative power. See, also, *Colony Town Club* v. *Unemployment Compensation Commission,* 301 Mich 107, 113.

"The State legislatures cannot delegate their sovereign powers to the Federal government. While a statute is valid which adopts existing statutes, rules, or regulations of congress by reference, an attempt to make future regulations of congress part of the State law is generally held to be unconstitutional." 16 CJS, p 343.

"Since under the doctrine of the separation of the powers of government the lawmaking function is assigned exclusively to the legislature, it is a cardinal principle of representative government that except when authorized by the Constitution— as may be the case in reference to municipal corporations—the legislature cannot delegate the power to make laws to any other authority or body [citing decisions in 30 States]. Any attempt to abdicate legislative power in any particular field, although valid in form, is unconstitutional and void." 11 Am Jur, pp 921, 922, § 214.

We note that in both Corpus Juris Secundum and American Jurisprudence there are recited important limitations and exceptions to the principle, as above set forth, of nondelegation of legislative power granted by a constitution, but consider this case is,

on that subject, controlled by authorities herein cited.

The statute, above quoted (CL 1948, § 691.611), attempts to incorporate into its standards any future changes of postal regulations as to second-class mail matter. The validity of the publication of legal notices must not be made to depend upon such action by the Federal agency.

It is admitted that the actual printing of the Dearborn Guide does not occur in the city of Dearborn. The fact that the "dummy" is prepared and then forwarded to the city of Hamtramck for printing and then the printed matter again brought back to Dearborn for publication is not a total process that complies with the requirement of section 5.14 of the charter which requires that the newspaper shall be such as "is printed and published in the city." It can be considered that the printing of the newspaper in the city of Dearborn was a matter of material consequence to the city of Dearborn. It was competent for the city to adopt section 5.14 and we note no valid objection to said section. Sufficient provision seems to have been made in the charter for the case if by reason of section 5.14 there shall transpire a total want of publications which can qualify with satisfactory service.

With the requirement of admission as second-class mail matter eliminated, the Dearborn Guide could qualify under the statute; but not under the section 5.14 of the charter of the city of Dearborn.

I have read the opinion of my Brother, Mr. Justice North, in which he holds that the provision as to the printing being done within the city should be held to be merely directory, not mandatory, and considers the Dearborn Guide to be qualified, notwithstanding the provisions of the charter. In support of his conclusion, Mr. Justice North cites the case of *Bebermeyer* v. *Board of County Commissioners*

*of Edmunds County,* 63 SD 593 (262 NW 175), in which the South Dakota court construes a statute applicable to the various political subdivisions of the State. Such a statute should be construed in such a manner that its application to the various political subdivisions shall work no unnecessary hardship to any of the political subdivisions. The court in the *Bebermeyer Case* say:

"From the point of view of notice to the public, it is difficult to see where the situation would be in any manner improved if the type were set by hand and the actual printing done on the presses in Roscoe [the place concerned with the publication] as was formerly the case."

As we shall hereinafter see, in passing upon the requirement now under consideration that the printing be done in Dearborn, it is to be conceded that the *main* purpose of publication is to give notice of the pending or contemplated proceedings to those persons who may be presumed to be interested therein, and Mr. Justice NORTH gives scant consideration to any other purpose of publication than the giving of such notice. But as we shall hereinafter see, that while notice to presumably interested persons is the main purpose, undoubtedly in the instant case voters of the city of Dearborn under its home-rule charter have also the purpose of encouraging printing establishments to be maintained in Dearborn as the place of printing, and have a right so to do.

Mr. Justice NORTH proceeds to quote the case of *In re McDonald,* 187 Cal 158 (201 P 110), in which case a state-wide statute was being considered, as distinguished from a city ordinance in the instant case applicable only to the one political subdivision and limited to the purposes and needs of that particular community. As to the *McDonald Case,* see *In*

*re Monrovia Evening Post,* hereinafter cited. Justice NORTH also cites the case of *Bayer* v. *Hoboken,* 44 NJL 131, in which the New Jersey court considered the action of the common council of the city of Hoboken, New Jersey, in awarding a contract to a newspaper, the presswork of which was done in New York city, and adduced as an argument in favor of the decision of the court upholding the action of the common council that it "is on the side of economy in expenditure; a clear case should be presented to lead the court to reverse it."

The court may properly consider an argument to sustain the action of the common council in construing a statute and look with favor upon an action which can be thought to be economical of public funds and give weight to such argument in favor of the action of the common council but this constitutes no reason why a mere argument of supposed economy can be said to be sufficient reason for the court overturning the city charter provision in question. The arguments pro and con on the subject of economy constitute a legislative question for the voters of Dearborn to determine rather than a judicial question for this Court to determine, especially when the practical deletion of a provision in the city charter is accomplished by the opinion resting, at least in part, upon such argument as to economy, in contrast to which attitude in the opinion of Mr. Justice NORTH, there is the reasoning in the case of *State, ex rel. Vickers,* v. *Board of County Commissioners of Big Horn County,* 77 Mont 316 (250 P 606), cited by Mr. Justice NORTH but the reasoning for which is not set forth in his opinion, in which the Montana court construed a statute of the State which requires the county commissioners of the several counties (p 321),

" 'To contract with some newspaper, published at

least once a week, and of general circulation, published within the county, and having been published continuously in such county at least one year, immediately preceding the awarding of such contract, to do and perform all of the printing for which said counties may be chargeable,' et cetera."

In passing upon the situation of a newspaper which the Montana court found did not comply with such provision, the court commented on the New Jersey case of *Bayer* v. *Hoboken, supra,* and said (p 322):

"There the purpose of the act was to insure notice to the people of the city as to the action of the council, and that purpose was served by the paper considered, regardless of where the mechanical work was done. But even though the case was on all fours with this case as to purpose, the facts here do not measure up to the findings in that case, as the most the evidence here shows is that the editorial matter and copy for the Searchlight were written in its office at Hardin and the papers were issued from there to its subscribers."

The Montana court further said (p 324):

"We have heretofore held that 'the word "published," as used in the statute, evidently means printed and published. It refers to a newspaper having its home in the county' (*Stange* v. *Esval,* 67 Mont 301 [215 P 807]), and, whether such declaration was or was not necessary to a decision in that case it correctly interprets the statute and expresses the legislative intent in its passage. To hold otherwise would defeat the purpose of the act by permitting a large concern situated in a city within the State, or even without the State, to control the county printing in any number of counties by establishing offices therein and furnishing such offices with papers for distribution within the counties."

We are not concerned in this case with the status of newspapers which have certain printed matter called patent insides, as that is not in issue in the instant case, although commented on in the Montana case.

We further note the following cases from 33 Words & Phrases, p 636:

"The word 'printed,' as used in a statute requiring notice of foreclosure to be published in a newspaper printed in the county, does not include a newspaper published in the county, as a newspaper may be published in a county and yet not be printed there. *Bragdon* v. *Hatch,* 77 Me 433 (1 A 140), citing *Blake* v. *Dennett,* 49 Me 102."

"Newspaper held not qualified to print legal notices, which are required to be published in a 'newspaper of general circulation' in particular city, under Pol Code, § 4458, where mechanical work and printing is done elsewhere, since, under section 4460, a newspaper of general circulation must be printed and published where it seeks patronage of such notices, and under section 4463, 'printed' means mechanical work of production, and 'published' means issuance from place where printed. *In re Monrovia Evening Post,* 199 Cal 263 (248 P 1017)."

We note the following from 5th Decennial Digest, vol 34, p 2207:

"In proceeding for order directing board of trustees of village to designate only newspaper in village as newspaper in which should be published treasurer's report, rather than newspaper of neighboring village, no consideration could be given to circulations of newspapers or cost of printing in the newspapers. Village Law, § 89.*  *Roy* v. *Murphy,* 33 NYS2d 991."

The instant case is distinguishable from the cases cited by Mr. Justice North, on the ground that the cases cited by him appertain to general statutes ap-

---

* 63 McKinney's NY Consol Laws § 89.—Reporter.

plicable to several political subdivisions of a State, whereas in the instant case we are concerned only with a city charter adopted by the city of Dearborn, a home-rule city, affecting only that one political subdivision.

The mandatory nature of a provision for local printing was assumed and enforced in *Dexter* v. *Cranston,* 41 Mich 448.

The opinion in the case of *Drabinski* v. *Auditor General,* 296 Mich 463, does not treat as merely directory the requirement of local printing but says, p 469, the requirement was substantially complied with because "the actual printing of this newspaper in that county was only temporarily suspended."

With the decisions in definite conflict on the mandatory nature of statutory requirements prescribing printing as well as publication of public notices in political subdivisions of the State with differing local situations and needs, there is no decision called to our attention that gives a mere directory effect to a city charter provision requiring printing and publishing in that city of the public notices of city proceedings and matters of municipal nature, other than the case of *Roy* v. *Murphy, supra,* in which case the requirement as to printing is in effect deemed mandatory.

The practical effect of Mr. Justice NORTH's opinion is to wipe out from the charter of the city of Dearborn the word "printed," by construing it to be directory only. Inherent in the reasoning in the cases cited by Mr. Justice NORTH is the thought that if the legislature of the State had in any one of the cases cited by him considered the plight of a particular political subdivision, they could be considered as having intended that the language of the statute should be liberally construed to favor the apparent needs of the particular municipality involved.

In the instant case, the voters of Dearborn voted on the particular matter of deleting the word "printed" from the city charter and that particular narrow issue (upon a proposed amendment to the city charter) was rejected by a vote of 8,489 yes to 11,835 no. Any suspicion that the voters attached no particular importance to the inclusion of the word "printed" in the charter is entirely negatived by the fact of the election. It is highly improbable that the city of Dearborn would have held a referendum on the subject of retaining or deleting the word "printed" from the charter if the requirement that the newspaper be printed in Dearborn had been considered directory only. The public of Dearborn (the only community affected) have practically construed the provision in dispute and declared it mandatory.

By the express vote by the electorate on the very subject of retention of the word "printed," the instant case is differentiated from the cases cited by my Brother, Mr. Justice NORTH, and from all other cases to which our attention has been directed after considerable research. Local economy reasons, including encouragement of local printing establishments and city taxes thereon, may be cited for *sustaining* the requirements of the charter.

There is no claim in this case that the broad powers of a home-rule city are limited in any such way as to require the deletion of the word "printed" in the instant case.

The language of the charter is clear and unambiguous; both words are used in the charter, *"printed and published* in the city." (Italics supplied.)

There is no compelling reason why the word "printed" in the Dearborn city charter in question should be in practical effect eliminated from the charter by judicial construction. A majority of the voters of Dearborn have a right to determine that

such notices shall be printed in Dearborn as well as published there.

With the requirements of admission as second-class mail matter eliminated, the Dearborn Guide could qualify under the statute; but not under section 5.14 of the charter of the city of Dearborn.

The decree appealed from is reversed. A decree should be entered in this Court in accordance with this opinion.

DETHMERS, J., concurred in the result reached by REID, C. J.

NORTH, J. Chief Justice REID in effect has written to the conclusion that the statutory provision making it an essential qualification of the newspaper with which a contract has been made as the official publication of the city of Dearborn, that such newspaper shall be one admitted by the postal department as second-class mail is invalid. In that conclusion I concur; but I am not in accord with the conclusion reached by the Chief Justice that under the charter provision of the city of Dearborn it is also requisite that the newspaper to be used as the official medium of publication for the city must be "printed in the city." Instead, for the reasons and under the authorities hereinafter noted, I am of the opinion that in construing the charter provision as to the "printing" being done within the city it should be held to be merely directory, not mandatory.

It is of first importance in passing upon the issue under consideration to determine what is the purpose sought to be accomplished by this charter provision for publication of legal notices. It seems too clear for argument that certainly in the main the purpose of publication is to get notice of the pending or contemplated proceedings to those persons who may be presumed to be interested therein. That

purpose is in no way accomplished by the doing of the mechanical acts which are only incidental to publication. Instead if the publication and circulation of the particular newspaper selected are within the city, the purpose of the charter provision is accomplished regardless of where the mechanical work incident to printing is done. A rather thorough search seems to reveal that the weight of authority so holds. A contrary holding in a case wherein the municipality in which there was only 1 newspaper "printed" and otherwise qualified, would give such newspaper a monopoly and subject a municipality to the necessity of contracting for publication of its legal notices with such newspaper regardless of how disadvantageous to the city might be the terms of a contract acceptable to the newspaper. Certainly such a condition would be to the disadvantage of the taxpayers.

While the decisions hereinafter noted arose incident to the construction of statutory requisites, the same tests and holdings would be applicable to a requisite provided by charter, as in the instant case. As indicated above, we conclude from our research that the more persuasive reasoning and the weight of authority are in favor of a liberal construction of a provision as to the notification being "printed" within a specified area, rather than a construction in a narrow or technical sense. The conclusion of the trial judge was in accord with the foregoing. In his decree he stated:

"That section 5.14 of the city charter which provides for the publication of legal notices in a newspaper which is 'printed and published in the city' means that the purpose of publication is to disseminate to the public of the city the proceedings of its official bodies, and that this purpose is effectuated regardless of the place where the mechanical process of printing the paper is carried on. The Dearborn

Guide therefore qualifies under the language above quoted from section 5.14 of the city charter."

In deciding a case in this field of the law the supreme court of South Dakota said:

"The interpretation and construction of a statute of this sort cannot and should not be disassociated from the purpose and object thereof. If in any given case the whole picture shows that the design of the statute is being effectuated, certain conduct may very well be deemed in that case a sufficient technical compliance with the statutory requirements when otherwise it would not be.   *   *   *   From the point of view of notice to the public, it is difficult to see where the situation would be in any manner improved if the type were set by hand and the actual printing done on the presses in Roscoe [the place concerned with the publication] as was formerly the case."   *Bebermeyer* v. *Board of County Commissioners of Edmunds County,* 63 SD 593 (262 NW 175).

Prior to a subsequent change in the statutory provisions, the supreme court of California in passing upon the qualification of a newspaper under a statute which provided for publication of notices to be in a newspaper of " 'general circulation,' " and defined that requisite as being a newspaper " 'established, printed and published at regular intervals, in the   *   *   *   town, where such   *   *   *   notice by publication   *   *   *   is given or made' " stated the following in its opinion:

"In the production of the publication, everything is done at Ontario, save the setting up of the type and making the impressions on the paper. It would be giving too narrow a meaning to the word 'printed' to hold that these acts alone were contemplated by its use in the statute. The only reasonable construction that can be given to 'printed and published' is that the paper must be produced in the

community where it is aimed to have it recognized as a legal advertising medium." *In re McDonald,* 187 Cal 158 (201 P 110).

Another case in this field of the law arose where the common council of the city of Hoboken, New Jersey, passed a resolution requiring, in accord with a statutory provision, that publication be " 'in a newspaper or newspapers printed and published in said city.' " The actual mechanics of making impressions on the paper, *i.e.,* the printing, were performed in New York. The New Jersey court said:

"The paper selected by the resolution sought to be set aside, is, within the reason and spirit of the law, 'printed and published' in this (New Jersey) State." *Bayer* v. *Hoboken,* 44 NJL 131.

In this New Jersey case it is also said: "The action of the common council is on the side of economy in expenditure; a clear case should be presented to lead the court to reverse it."

Another case somewhat in the same field of the law was before the supreme court of Minnesota. The statutory provision as to the requisites of a lawful medium of publishing a legal notice was that it shall: " 'Be printed from the place from which it purports to be issued.' " The particular paper was in fact printed in one building, but its business establishment was located elsewhere. The court held that, notwithstanding the statutory provision above noted, the proper construction thereof led to the conclusion that "the statute authorizes the presswork to be done elsewhere." *North Central Publishing Co.* v. *City of St. Paul,* 198 Minn 335 (269 NW 835).

Notwithstanding there is some authority to the contrary,* we are of the opinion that as a matter of

---

* See *State, ex rel. Vickers,* v. *Board of County Commissioners of Big Horn County,* 77 Mont 316 (250 P 606).

giving fair consideration to the purpose sought to be served by the printing of legal notices and in view of the authorities hereinbefore cited, the provision under section 5.14 of the Dearborn charter as to its legal notices being "printed" in the city should be given a liberal construction rather than, in a technical sense, holding it mandatory. Hence, we conclude that even under the provision as embodied in the city charter, the Dearborn Guide, as held by the trial judge, was qualified as a medium in which to publish legal notices of the city, notwithstanding the mechanical work incident to the printing was not done within the city of Dearborn.

In reaching the foregoing conclusion we are mindful of our decisions in *Drabinski* v. *Auditor General,* 296 Mich 463, and *Dexter* v. *Cranston,* 41 Mich 448. However it was not essential to decision in either of these cited cases that the opinion therein should have been broad enough to cover the specific issue now under consideration; and a reasonably careful reading of each of the above cases will disclose that the precise question was not specifically passed upon in either of them. Instead, only by implication was it assumed that the newspaper should be printed in the specified territory. We are not in accord with such an assumption. In the *Drabinski Case* we said:

"We   *   *   *   think that we have heretofore recognized that the physical act of the printing of a newspaper may under certain circumstances be performed at some point other than the place of publication without violating the provision of the statute that a notice shall be *printed,* published and circulated in the county in which the act, of which notice must be given, is to be performed."

A decree may be entered in this Court in accordance herewith. Costs to defendants.

Boyles, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred with North, J.