THE WYMORE ARBOR STATE, INC., A NEBRASKA CORPORATION, APPELLEE, v. MILO KORINEK ET AL., DOING BUSINESS AS THE WILBER REPUBLICAN, APPELLANTS.

156 N. W. 2d 24

Filed February 2, 1968. No. 36537.

Dean R. Sackett, for appellants.

Andersen & Hubka, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a declaratory judgment action to determine the rights of the parties under a contract to reproduce a newspaper.

The plaintiff, The Wymore Arbor State, Inc., is owner and publisher of a legal newspaper which plaintiff reproduces by photo offset process in Wymore, Gage County, Nebraska. The defendants, Milo Korinek and Arlene Korinek, are owners and publishers of "The Wilber Republican," a newspaper with offices in Wilber, Saline, County, Nebraska. It has been a legal newspaper in Saline County for many, many years. The contract provided for the reproduction in volume of The Wilber Republican in Wymore, Nebraska, by the photo offset reproduction process. Under the contract, the defendants are required to assemble in its entirety, each complete and original edition of The Wilber Republican. This original edition is to be delivered to the plaintiff at Wymore, where the plaintiff will reproduce it in volume.

The defendants then take the press run as reproduced and return it to Wilber. The contract specifically provides that if the reproducing procedures contemplated by the contract would deprive The Wilber Republican of its qualification as a legal newspaper in Saline County, the contract was subject to immediate termination.

The district court determined that the contract involved was a valid contract and that The Wilber Republican would continue to be a legal newspaper in the County of Saline if reproduced pursuant to the terms of the contract.

A brief résumé of the operation of the photo offset reproduction process is necessary for clarification and comparison with traditional newspaper printing processes and procedures. Under traditional processes, linotype machines and other devices are used in setting the lead type and preparing the page forms for the presswork. Under the offset process, other machines and devices are used in place of the traditional composing room methods. No metal type is used in the offset process. Two machines are ordinarily employed, sometimes known as Justo-writers or Vari-typers. The first of these machines has substantially a typewriter keyboard. It not only types the material, but perforates a tape. The tape, in turn, is fed into the second machine which automatically adjusts margins and, in effect, types or prints material in newspaper columnar form. Errors or deletions may be made from the tape and material may be edited or reprinted either through the machines or by paste-over. The material in newspaper columnar form is then pasted on a layout page along with photographs or advertising material, and the final layout page becomes the original or master page form. A similar paste-up sheet or master sheet is made up for each page. Each page is photographed and, by the offset process, the image is transferred to a rubber roller or blanket which, in turn, is wrapped on a cylinder and from it the ink is offset to the paper. This final portion of the process is

sometimes referred to as offset lithography.

Under the facts here, the defendants continue to gather the news and advertising, prepare, compose, edit, and assemble it in its entirety as a newspaper in the page form in which it is to be reproduced. This work will all be done at the office of The Wilber Republican in Saline County. The original or master page copies will be delivered to the plaintiff. The plaintiff then furnishes all camera work, paper, ink, and press and presswork necessary for printing and reproducing the newspaper. The defendants will then return it to Saline County where it will be issued and distributed by mail or otherwise, in the same fashion as it has been in the past.

The crucial question here is whether the performance of the mechanical acts of printing or reproduction outside the county destroys the qualification as a legal newspaper in the county in which the newspaper has its office, and is prepared, published, and issued.

The statute directly involved is section 25-523, R. R. S. 1943, which, insofar as is applicable here, provides: "No newspaper shall be considered a legal newspaper for the publication of legal and other official notices unless the same shall have a bona fide circulation of at least three hundred copies weekly, and shall have been published within the county for fifty-two successive weeks prior to the publication of such notice, and be printed, either in whole or in part, in an office maintained at the place of publication; * * *."

The problem of interpretation of such statutes has been considered many times by courts over a long period of years. Statutory variations make it difficult to determine consistent principles. See 66 C. J. S., Newspapers, § 7, p. 30.

Many cases have recognized that the purpose sought to be accomplished must be considered, and that statutes of this character are principally designed to see that notice is given of legal or official proceedings pending or contemplated to those persons who are, or may be pre-

sumed to be, interested therein. Cases taking this approach suggest a broad or liberal construction of such provisions rather than construction in a narrow or technical sense. The case of Dearborn Independent, Inc. v. City of Dearborn, 331 Mich. 447, 49 N. W. 2d 370, represents this view. It specifically held that a charter provision requiring that the official newspaper of the city be "printed and published in the city" did not disqualify a newspaper notwithstanding the mechanical work incident to the printing was not done within the city. The court in that case held that the underlying purpose of the provision was to give notice, and that purpose was not affected or accomplished by the doing of the mechanical acts which were only incidental to publication. For cases supporting such construction on closely related facts, but in terms of traditional printing processes, see, In re Application of McDonald, 187 Cal. 158, 201 P. 110; North Central Pub Co. v. City of St. Paul, 198 Minn. 335, 269 N. W. 835; Bayer v. City of Hoboken, 44 N. J. Law 131; Bebermeyer v. Board of Commissioners, 63 S. D. 593, 262 N. W. 175. The latter case involved relevant statutory language identical to the Nebraska statute.

As long ago as 1897, this court had occasion to construe a statute requiring notice to be given "in some newspaper printed in the county, or in case no newspaper be printed in the county, in some newspaper of general circulation therein." The case was Nebraska Land, Stock-Growing & Investment Co. v. McKinley-Lanning Loan & Trust Co., 52 Neb. 410, 72 N. W. 357. The affidavit involved certified that the notice was "published" in the county. This court said: "We do not think that the word 'print' was by the legislature used in the specific and somewhat technical sense of designating the purely mechanical act of impressing the characters upon the paper. The object of the statute was to give notice, and if the legislature had the distinction at all in view it would not for that purpose have selected the place of printing instead of that of publication." This

language was reaffirmed in 1902 in Aetna Life Ins. Co. v. Wortaszewski, 63 Neb. 636, 88 N. W. 855.

The cases which have been referred to discuss the problem of statutory interpretation within a frame of reference involving traditional printing processes. There have been few cases in which the particular problems or differences involved in offset lithograph as contrasted with traditional printing have been considered or discussed. See, Peckham v. California Newspaper Publishers Assn., 108 Cal. App. 2d 53, 238 P. 2d 111; Garten v. Tibbitts, 63 Cal. Rptr. 69 (October 18, 1967). These two cases are not cited in the briefs and involved radically different statutes from ours. However, they clearly held that with reference to a newspaper "printing" was not limited to "impressing type on paper," but includes the mechanical work of producing a newspaper by any reasonable means, and includes offset lithography.

Our statute requires only that the printing be done *either in whole or in part* in an office maintained at the place of publication. Here the procedures to be performed by the defendants in Saline County should be viewed in the light of the traditional newspaper printing procedures they replace. The procedures of offset lithography in a newspaper office, up to and including the paste-up of the master page copy of the newspaper, replace the traditional printing procedures of preparation of metal and type, setting of type, and assembly and setting of page forms for the presswork. Those procedures constitute a substantial and important part of newspaper printing under traditional methods. The newspaper procedures of offset lithography which replace them should be considered comparable in construing a statute dealing with newspaper printing.

We think the Legislature intended to provide for notice by means of a local newspaper where possible, and that in the contemplation of the Legislature, a local newspaper was one having an office in the county in which the material for publication would be gathered,

organized, arranged, and edited, and from which office the ultimate publication would be issued and distributed. We do not believe the Legislature intended to prohibit doing the mechanical acts of printing or reproduction outside the county. The place of mechanical reproduction bears no vital relationship to the underlying problem of notice.

We hold that performing the mechanical acts of reproducing a newspaper, outside the county in which the newspaper has its office and is produced, published, issued, and distributed, does not violate the requirement of section 25-523, R. R. S. 1943, that a legal newspaper "be printed, either in whole or in part, in an office maintained at the place of publication."

The district court was correct in holding that the contract was a valid and binding agreement and that The Wilber Republican would continue its status as a legal newspaper in the County of Saline if reproduced pursuant to the terms of the agreement. The judgment is affirmed.

AFFIRMED.