THE HASTINGS GAZETTE v. CITY OF HASTINGS.

245 N. W. 2d 456.

August 27, 1976—No. 45972.

*Lawrence, Costello & Moratzka* and *Timothy D. Moratzka,* for appellant.

*McMenomy, Hertogs & Fluegel* and *Donald J. Fluegel,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is an appeal from an order of the district court dismissing appellant's action to enjoin the city of Hastings from publication of its official business in the Mississippi Valley Star newspaper. The sole issue on appeal is whether the Mississippi Valley Star is "printed in" the city of Hastings and thereby eligible under Minn. St. 331.02, subd. 7(1), to be designated as the official publication of Hastings. We affirm the trial court's determination that it is "printed in" the city of Hastings.

The facts are not disputed and were submitted to the trial court by affidavit. Appellant, the Hastings Gazette, is a legal newspaper printed in, distributed within, and has a known office of issue within the city of Hastings. In short, the Hastings Gazette is a completely local operation. The Mississippi Valley Star is also a local operation except that the making of page negatives and the actual running of the press are done in the city of Red Wing.

It is undisputed that most of the Mississippi Valley Star's activities are conducted in the city of Hastings. The newspaper's only office is located in Hastings. All of the newspaper's typesetters, reporters, photographers, advertising personnel, and secretaries, totaling 20 employees, work at the office in Hastings. The pages of the newspaper are completely composed, including typed material, advertisements, and photographs, in final page form, at the office in Hastings. However, at this point the pages are taken to a facility outside the city to be photographed, and

the negatives obtained are then run on presses, resulting in the finished pages. The pages are returned to the office at Hastings, where they are addressed, mailed, and delivered.

In 1972 the Mississippi Valley Star applied to the Hastings City Council for designation as the official publication of the city of Hastings. The city, uncertain as to whether the Mississippi Valley Star was "printed in" the city as required by Minn. St. 331.02, subd. 7(1), requested an opinion from the attorney general on the issue.[1] While the city was waiting for this opinion, it designated appellant as the official publication of Hastings. The attorney general's opinion concluded that the Mississippi Valley Star was in fact "printed in" the city of Hastings, and, therefore, eligible under Minn. St. 331.02, subd. 7(1), to be designated as the city's official publication. Consequently, the Mississippi Valley Star again applied for designation as the official publication for the city of Hastings. On January 13, 1975, the city council considered this application and a similar application by appellant, and concluded that the official designation should be rotated between the two qualified newspapers. Accordingly, the council designated the Mississippi Valley Star as the official publication of the city of Hastings for 1975.

Appellant sought to enjoin the city of Hastings from designating the Mississippi Valley Star as an official publication on the grounds that it is not "printed in" the city of Hastings, and, therefore, ineligible under the statute. On the basis of uncontroverted affidavits and oral argument, the trial court concluded that the Mississippi Valley Star is "printed in" Hastings, and granted the city's motion to dismiss the action.

Minn. St. 331.02, subd. 7(1), provides:

"Subd. 7. The governing body of any municipality or other local public corporation, or other authorized officer thereof, when authorized or required by statute or charter to designate

---

[1] The facts submitted to the attorney general are substantially the same as the facts submitted to the trial court by affidavit.

a newspaper therein for publication of its official proceedings and public notices, shall designate a newspaper which is a duly qualified medium of official and legal publication in the sequence and order as follows:

"(1)   If there is a qualified newspaper which is *printed in*, has a known office of issue within and is distributed from within such municipality or other local public corporation, such newspaper shall be designated, and if there be more than one such newspaper, then one such newspaper be designated." (Emphasis added.)

Appellant contends that the statutory requirement of "printed in" refers to the specific mechanical act of impressing type on paper and that since the Mississippi Valley Star has this presswork done outside the city of Hastings, it is ineligible under Minn. St. 331.02, subd. 7(1), for designation as the official publication of Hastings. The city of Hastings counters that the statutory phrase "printed in" was intended to encompass the entire process of preparing and producing the newspaper and should not be limited to the actual running of the presses.

In North Central Pub. Co. v. City of St. Paul, 198 Minn. 335, 269 N. W. 835 (1936), this court was called upon to consider the effect of a statute which required a newspaper to be "printed" in a particular place. The specific question in North Central was whether The Midway News satisfied the statutory requirement that it "be printed from the place from which it purports to be issued" (Mason St. 1927, § 10935). The facts showed that the linotype work for the newspaper was *not* done in the place from which the newspaper was issued, but was "done by a job printing establishment on another floor in the same building." 198 Minn. 336, 269 N. W. 835. However, this court noted that the "entire setup of the paper [was] composed in the office of *The Midway News*." 198 Minn. 336, 269 N. W. 835. Based on these facts this court interpreted the statute as allowing "the presswork to be

done elsewhere." 198 Minn. 337, 269 N. W. 835.[2] Thus this court refused to interpret the "printed from" requirement in the statute as referring only to the mechanical act of impressing type on paper.

The majority of other jurisdictions have also given a broad or liberal construction to statutes which require a newspaper to be "printed in" a particular location. In Dearborn Independent, Inc. v. City of Dearborn, 331 Mich. 447, 49 N. W. 2d 370 (1951), the Michigan Supreme Court held that a charter provision requiring that the official newspaper of the city be "printed and published in the city" did not disqualify a newspaper notwithstanding the fact that the mechanical work incident to the printing was not done within the city. The Michigan court stated (331 Mich. 464, 49 N. W. 2d 371):

"* * * [I]f the publication and circulation of the particular newspaper selected are within the city, the purpose of the charter provision is accomplished regardless of where the mechanical work incident to printing is done. A rather thorough search seems to reveal that the weight of authority so holds."

And in In re McDonald, 187 Cal. 158, 161, 201 P. 110, 111 (1921), the Supreme Court of California concluded:

---

[2] Appellant attempts to distinguish North Central Pub. Co. v. City of St. Paul, 198 Minn. 335, 269 N. W. 835 (1936), on the grounds that the presswork was done in the same building and in the same city whereas in the instant case the presswork is done in a different city. The issue in North Central was whether The Midway News could qualify "as a medium of official and legal publications" even though all of its printing activities were not conducted at the place required by statute. The same issue is presented in the instant case, that is, whether the Mississippi Valley Star may be designated an official publication even though all of its printing activities are not conducted at the place required by statute. In North Central, this court interpreted the statute as allowing "the presswork to be done elsewhere." 198 Minn. 337, 269 N. W. 835. The fact that the presswork was done in the same building in the North Central case was not a relevant factor in the court's reasoning.

"* * * In the production of the publication, everything is done at Ontario, save the setting up of the type and making the impressions on the paper. It would be giving too narrow a meaning to the word 'printed' to hold that these acts alone were contemplated by its use in the statute. The only reasonable construction that can be given to 'printed and published' is that the paper must be produced in the community where it is aimed to have it recognized as a legal advertising medium." [3]

See, also, Ruble v. Redden, 517 P. 2d 1124 (Okla. 1973); Wymore Arbor State, Inc. v. Korinek, 182 Neb. 557, 156 N. W. 2d 24 (1968); Bebermeyer v. Bd. of Commrs. 63 S. D. 593, 262 N. W. 175 (1935); Bayer v. City of Hoboken, 44 N. J. L. (15 Vroom) 131 (1882).

In the instant case, all of the activities necessary to prepare and produce a "camera-ready" copy of the Mississippi Valley Star are performed in the city of Hastings. These facts justify the trial court's conclusion that the newspaper is in fact "printed in" the city of Hastings for purposes of Minn. St. 331.02, subd. 7(1). No public purpose would be served in disqualifying this newspaper from being designated as the official publication of the city of Hastings. Indeed, disqualifying the Mississippi Valley Star would appear to give appellant a monopoly of the legal publication business in the city of Hastings, and thus operate to the disadvantage of the citizens of Hastings. As the Michigan Supreme Court noted in Dearborn Independent, Inc. v. City of Dearborn, *supra* (331 Mich. 464, 49 N. W. 2d 371):

---

[3] Appellant argues that In re McDonald, 187 Cal. 158, 201 P. 110 (1921), has been overruled by In re News-Ledger, 255 Cal. App. 2d 211, 63 Cal. Rptr. 69 (1967), in which it was held that a newspaper which had its presswork done outside the county could not be deemed to be "printed in" that county. However, the court in that case was interpreting a statute, Cal. Gov't. Code § 6003 (West 1966), which specifically provided:

"For a newspaper to be 'printed,' the mechanical work of producing it, that is the work of typesetting and impressing type on paper * * *."
The statute in Minnesota does not define "printed" in that manner.

"* * * A contrary holding in a case wherein the municipality in which there was only 1 newspaper 'printed' and otherwise qualified, would give such newspaper a monopoly and subject a municipality to the necessity of contracting for publication of its legal notices with such newspaper regardless of how disadvantageous to the city might be the terms of a contract acceptable to the newspaper. Certainly such a condition would be to the disadvantage of the taxpayers."

Thus, under the facts in this case we hold that the Mississippi Valley Star is "printed in" the city of Hastings for purposes of Minn. St. 331.02, subd. 7(1). Therefore, we affirm the trial court's order dismissing appellant's action.

Affirmed.